IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| TIARA ENGLE and PORTNER ORTHOPEDIC REHABILITATION, INCORPORATED,<br><br>    Plaintiffs,<br><br>  vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY; JOHN DOES 1-10, JANE DOES 1-10; DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, ROE "NON-PROFIT" CORPORATIONS 1-10; and ROE GOVERNMENTAL ENTITIES 1-10,<br><br>    Defendants.<br><br>_____ | CIVIL NO. 04-00256 SOM BMK<br>(Other Civil Action)<br><br>MEMORANDUM IN SUPPORT OF MOTION |

146205.1

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ..................................................................... 1

II.   BACKGROUND ...................................................................... 3

    A.    Undisputed Facts ............................................................ 3

    B.    Procedural History ......................................................... 5

III.  ARGUMENT .......................................................................... 6

    A.    Standard of Review ........................................................ 6

    B.    Engle's Breach of Contract Claim Fails Because She is Not the
        Real Party in Interest ...................................................... 8

    C.    Reliance on a Record Review Does Not Constitute Bad Faith .......... 12

        1.    The Application of Section 431:10C-308.5(b) to Pure
            Record Reviews Was an Open Question of Law at the
            Time of Dr. Lau's Record Review ............................. 12

        2.    Liberty Mutual Did Not Act in Bad Faith ............................... 14

    D.    Plaintiffs' Claim for Punitive Damages Fails as a Matter of Law ..... 21

IV.   CONCLUSION ........................................................................ 25

## TABLE OF AUTHORITIES

PAGE(S)

**STATE CASES**

Austero v. National Cas. Co.,
    148 Cal. Rptr. 653 (Ct. App. 1978)..................................................... 16, 17

Best Place, Inc. v. Penn America Ins. Co.,
    82 Hawai'i 120, 920 P.2d 334 (1996) .................................... 12, 13. 14, 15, 16

California Shoppers Inv. v. Royal Globe Ins. Co.,
    175 221 Cal. Rptr. 171 (Ct. App. 1985) ............................................... 16

Enoka v. AIG Hawaii Ins. Co.,
    109 Hawai'i 537, 128 P.3d 850 (2006) .......................................... 13, 14

Francis v. Lee Enters., Inc.,
    89 Hawai'i 234, 971 P.2d 707 (1999) ................................................. 21

Gamata v. Allstate Ins. Co.,
    90 Hawai'i 213, 978 P.2d 179 ............................................................. 9

Gruenberg v. Aetna Ins. Co.,
    510 P.2d 1032 (Cal. 1973) .......................................................... 15, 16

Masaki v. General Motors Corp.,
    71 Haw. 1, 780 P.2d 566 (1989) ............................................21, 22, 24, 25

Tomaselli v. Transamerica Ins. Co.,
    31 Cal. Rptr. 2d 433 (Cal. Ct. App. 1994)...................................... 18, 24

Wilson v. AIG Hawaii Ins. Co.,
    89 Hawai'i 45, 968 P.2d 647 (1998) ....................................... 8, 10, 11, 12

**FEDERAL CASES**

Aronson v. State Farm Ins. Co.,
    2000 U.S. Dist. LEXIS 6976, 2000 WL 667285 (C.D. Cal. 2000) ..................... 15

Benton v. Allstate Ins. Co.,
  2001 WL 210685, *7 (C.D. Cal. 2001) .............................................. 20

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) ......................................................................... 7

Edison v. Reliable Life Ins. Co.,
  664 F.2d 1130 (9th Cir. 1981) ......................................................... 8

Feldman v. Allstate Ins. Co.,
  322 F.3d 660 (9th Cir. 2003) ......................................................... 20

Franceschi v. American Motorists Ins. Co.,
  852 F.2d 1217 (9th Cir. 1988) ....................................................... 18

Govt. Employees Ins. Co. v. Dizol,
  176 F. Supp. 2d 1005 (D. Haw. 2001) ........................................... 13

Guebara v. Allstate Ins. Co.,
  237 F.3d 987 (9th Cir. 2001) ............................................... 8, 18, 20

Hayes Bros., Inc. v. Economy Fire & Cas. Co.,
  634 F.2d 1119 (8th Cir. 1980) ....................................................... 24

Kirchoff v. American Cas. Co.,
  997 F.2d 401 (8th Cir. 1993) ......................................................... 23

Lange v. Penn Mut. Life Ins, Co.,
  843 F.2d 1175 (9th Cir. 1988) ....................................................... 23

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992) ......................................................................... 9

Musick v. Burke,
  913 F.2d 1390 (9th Cir. 1990) ......................................................... 7

Pacific Group v. First State Ins. Co.,
  841 F. Supp. 922 (N.D. Cal. 1993), rev'd on other grounds,
  70 F.3d 524 (9th Cir. 1995) ........................................................... 23

Paulson v. State Farm Mut. Auto. Ins. Co.,
  867 F. Supp. 911 (C.D.Cal. 1994) ................................................... 18

Richardon v. United States,
  841 F.2d 993 (9th Cir. 1988) ......................................................... 17

T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
  809 F.2d 626 (9th Cir. 1987) ........................................................... 7

Tran v. State Farm,
  999 F. Supp. 1369 (D. Haw. 1998) ........................................ 22, 23, 24

U-Haul Int'l., Inc. v. Jartran, Inc.,
  793 F.2d 1034 (9th Cir. 1986) ....................................................... 11

Willis v. Midland Risk Ins. Co.,
  42 F.3d 607 (10th Cir. 1994) ......................................................... 23

## HAWAII RULES

Haw. R. Civ. P. Rule 17(a) ........................................................... 9, 10

## FEDERAL RULES

Fed. R. Civ. P. Rule 17(a) ............................................................. 10

Fed. R. Civ. P. Rule 56 ............................................................... 7, 20

## STATE STATUTES

HRS § 431:10C-304(1) ................................................................ 9, 10

HRS § 431:10C-304(3)(B) ............................................................... 13

HRS § 431:10C-306(b) ................................................................... 12

HRS § 431:10C-308.5 ................................................... 5, 6, 10, 14, 17

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

I.    <u>INTRODUCTION</u>

This case arises from a motor vehicle insurance dispute over Personal Injury Protection ("PIP") benefits.  Only two claims remain of the claims brought by Plaintiffs Tiara Engle ("Engle") and Portner Orthopedic Rehabilitation, Incorporated ("Portner Orthopedic") (collectively, "Plaintiffs") in their Complaint, filed March 8, 2004 ("Complaint"): 1) breach of contract; and 2) breach of the implied covenant of good faith and fair dealing (bad faith).[1]  Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") seeks summary judgment against Engle on her remaining claims for breach of contract, bad faith, and punitive damages, leaving only Portner Orthopedic's claim for the denied bills, which it styles as a claim for breach of contract.

Summary judgment for Liberty Mutual is warranted on Engle's breach of contract claim because under Hawaii decisional law, she is not the real party in interest to assert breach of contract claims for disputed PIP bills that she was never responsible for paying.  Summary judgment is likewise warranted on

_____

[1] Plaintiffs' Complaint appears to include the following causes of action: (1) breach of contract; (2) tortious breach of contract; (3) breach of the implied covenant of good faith and fair dealing (bad faith); (4) violation of Hawaii's unfair claims settlement practices act; and (5) violation of Hawaii's unfair or deceptive trade or practices act.  Causes (2), (4) and (5) were disposed of by this Court's Order Granting Defendant Liberty Mutual Fire Insurance Company's Motion for Partial Judgment on the Pleadings, filed July 11, 2005.

Engle's claim for insurance bad faith because Liberty's conduct in denying certain PIP claims was never unreasonable – the test for common law bad faith – but was, instead, reasonably based an independent medical records review of Plaintiff's treatment history.  This Court has already determined the question of whether Liberty Mutual was entitled to base its denial of Engle's PIP benefits on a doctor's review of medical records, finding there is no Hawaii statute requiring auto insurers to always use independent medical exams (including physical exams) in lieu of less costly and less intrusive records reviews.  Furthermore, at the time of the record review at issue, the question as to whether an insurer could rely on such a review was an open question of law, which the Hawaii Supreme Court has held to be an insufficient basis for a bad faith claim.  Lastly, the claim for punitive damages must also fail, for Liberty Mutual's denial of insurance benefits to Engle does not rise to the level of egregious behavior requisite for an award of punitive damages; neither the Complaint nor the undisputed record warrants an award of punitive damages.

For these reasons, as explained more fully below, an order granting summary judgment in Liberty Mutual's favor as to Engle is warranted in this case.

II.    BACKGROUND

    A.    Undisputed Facts

        On May 2, 2003, Plaintiff Engle was riding as a passenger in a Liberty Mutual-insured motor vehicle and was entitled to PIP benefits under a Liberty Mutual auto insurance policy for her accident related injuries.  SCS at ¶ 1.[2]  At Liberty Mutual's request, Plaintiff completed a PIP application.  SCS at ¶ 2.  At the time, Ms. Engle complained of head, neck, back and arm pain from the accident for which she began treatment with Plaintiff Portner Orthopedic.  Id.

        Various medical providers submitted bills to Liberty Mutual for Engle's treatment, beginning with Kaiser Hospital for emergency room treatment on the day of her accident, and continuing with various bills for massage and chiropractic treatments from Plaintiff Portner Orthopedic.  SCS at ¶ 3.  Liberty Mutual paid these bills for services performed through August of 2003.  Id.  During this period, Liberty Mutual honored and paid a total of $6,593.92 in PIP claims for Plaintiff.  Id.  None of these charges is alleged to be a basis of Plaintiffs' current lawsuit.

        As part of its investigation of Engle's PIP claims, Liberty Mutual retained orthopedic surgeon Dr. Clifford K. H. Lau to undertake a record review of Engle's medical condition to determine what further treatment, if any, was

---

    [2]  "SCS" refers to Liberty Mutual's Separate Concise Statement of Facts filed concurrently herewith.

3

appropriate, reasonable, necessary and causally related to the subject accident. SCS at ¶ 4.  On November 10, 2003, Liberty Mutual forwarded Engle's medical records to Dr. Lau and asked him to address whether Engle required further treatment, including what type, what frequency and for how long.  Id.

Dr. Lau conducted the requested review and provided his findings to Liberty Mutual in a November 18, 2003 letter.  SCS at ¶ 5.  Dr. Lau concluded that based on his review of Engle's medical records, including periodic progress reports from Portner Orthopedic, that further treatment was not necessary.  Id.  Instead, he recommended a home exercise program focusing on abdominal strengthening exercises.  Id.

Based on Dr. Lau's findings and recommendations, on December 2, 2003, Liberty Mutual issued a Denial of Claim Form to Plaintiff Engle in care of her attorney, Roy K. S. Chang, Esq., denying Portner Orthopedic's PIP claim for an October 22, 2003 visit.  SCS at ¶ 7.  Engle, however, continued to treat with Portner Orthopedic, as well as other providers, who continued to submit claims to Liberty Mutual.  Id.  In response, Liberty Mutual issued further Denial of Claim Forms dated December 2, 2003 (for treatments October 30, November 6, 8, 12, 15 and 20, 2003) (Exhibit "F"); December 12, 2003 (for treatments November 20 and 26) (Exhibit "G"); December 19, 2003 (for treatments December 4, 2003) (Exhibit "H");  December 31, 2004 (for treatment December 12, 2003) (Exhibit "I");

4

January 15, 2004 (for treatment December 17, 2003) (Exhibit "J"); and February

26, 2004 (for treatment November 13, 2004) (Exhibit "K").  SCS at ¶ 8.

 With the exception of services rendered on November 13, 2003

(Exhibit "K") by non-party Yeoh & Muranaka, M.D.'s, Inc., the present Complaint

puts in issue Liberty Mutual's refusal to pay the remaining PIP claims submitted

by Plaintiff Portner Orthopedic and referenced by Exhibits "E" – "J".

B. <u>Procedural History</u>

 On January 19, 2005, Liberty Mutual filed its Motions for (1) Partial

Judgment on the Pleadings and (2) For Partial Summary Judgment.  Plaintiffs filed

their Counter Motion for Partial Summary Judgment on June 6, 2005.  Both

motions were heard on July 5, 2005 before this Court.  The motions addressed the

question of whether Liberty Mutual was required to comply with the requirements

in Hawaii Revised Statutes ("HRS") section 431:10C-308.5(b)[3] pertaining to

independent medical examinations ("IME") in securing Dr. Lau's records review.

Plaintiffs argued that, because Dr. Lau was not selected by mutual agreement and

---

 [3]  Hawaii Revised Statutes Section 431:10C-308.5(b) provides, in pertinent
part:

> The independent medical examiner shall be selected by
> mutual agreement between the insurer and claimant;
> provided that if no agreement is reached, the selection
> may be submitted to the commissioner, arbitration or
> circuit court.  The independent medical examiner shall be
> of the same specialty as the provider whose treatment is
> being reviewed, unless otherwise agreed by the insurer
> and claimant.

was not of the same specialty as Engle's providers, Liberty Mutual violated the statute.  <u>See</u> Order Granting Defendant Liberty Mutual Fire Insurance Company's Motion for Partial Judgment on the Pleadings; Order Granting Liberty Mutual's Motion for Partial Summary Judgment, filed July 11, 2005 ("Order") at 10. Liberty Mutual argued that the provisions in section 431:10C-308.5(b) regarding selection of the record reviewer do not apply to record reviews conducted in the absence of physical examinations.  <u>Id.</u>  This Court ruled in favor of Liberty Mutual and concluded:

> The court agrees with Liberty Mutual and concludes that the IME provisions in Haw. Rev. Stat. § 431:10C-308.5(b) do not apply to a record review performed in isolation, without other accompanying procedures necessary to complete an IME, particularly an in-person examination.

<u>Id.</u>

Following the Order, the only claims left for adjudication are "portions of Engle's breach of contract claim, and the bad faith claim insofar as it relates to those remaining portions of the contract claim."  <u>Id.</u> at 21.

III.    <u>ARGUMENT</u>

A.    <u>Standard of Review</u>

Rule 56(c) provides that summary judgment shall be entered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ.P. 56(c).  Here, Liberty Mutual has the initial burden of demonstrating

for the court that there is no genuine issue of material fact.  See Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  "Rule 56 places no evidentiary burden on a

moving defendant beyond that which is required for him to prevail at trial."

Musick v. Burke , 913 F.2d 1390, 1394 (9th Cir. 1990).  "Therefore . . . the moving

defendant need provide nothing more than a reference to those materials on file in

the case which support the movant's belief that there is an absence of any genuine

issues of material fact."  Id.

Once Liberty Mutual meets its burden, however, Plaintiffs "may not

rest upon the mere allegations or denials of the adverse party's pleading;" rather

Plaintiffs have the affirmative burden of coming forward with "specific facts

evidencing a need for trial."  Fed. R. Civ. P. Rule 56(e).  See also  T.W. Elec.

Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

"Hence the nonmoving party may not merely state that it will discredit the moving

party's evidence at trial and proceed in the hope that something can be developed at

trial in the way of evidence to support its claim."  809 F.2d at 630.  "Instead, it

must produce at least some significant probative evidence tending to support the

complaint."  Id. (citation and internal marks omitted).

In the context of insurance coverage disputes where the wording of policy language is not disputed, "[s]ummary judgment is appropriate, since the only dispute concerns the legal effect of language in the policy." Edison v. Reliable Life Ins. Co., 664 F.2d 1130, 1131 (9th Cir. 1981). Additionally, in the context of actions for bad faith claims handling, under California law, upon which Hawaii bad faith law is based, "a bad faith claim can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage" whether based in fact or law. Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001).

B.    Engle's Breach of Contract Claim Fails Because She is Not the Real Party in Interest.

Plaintiffs allege at Paragraph 16 of their Complaint that "Liberty Mutual has wrongfully breached the terms of the Insurance Policy [and] wrongfully breached its contract to provide PIP benefits and insurance coverage." However, as Liberty Mutual stated on the earlier cross-motions for summary judgment, the Hawaii Supreme Court has held that insureds, such as Ms. Engle, are not real parties in interest to sue an insurer for failure to pay no-fault benefits to medical providers because the insureds have no substantive right to the payments in the first instance. See Wilson v. AIG Hawaii Ins. Co., 89 Hawai'i 45, 968 P.2d 647 (1998). The court reasoned that because the State's no-fault law required auto insurers to pay medical providers directly for services rendered to an insured, and

because the same law prohibited providers from seeking payment from insureds in the event an insurer refused to pay, insureds lacked the requisite level of interest to pursue a breach of duty to pay claim under Haw. R. Civ. Proc., Rule 17(a). Accord, Gamata v. Allstate Ins. Co., 90 Hawai'i 213, 978 P.2d 179 (App. 1999).[4]

The same result obtains here. Hawaii's personal injury protection statutes, which succeeded the State's no-fault laws and which apply to the instant dispute, contain the same restrictions as those focused on by the Wilson court. In the case of PIP benefits for medical services, HRS § 431:10C-304(1) (2000) requires insurers to pay medical providers directly for their services instead of their insureds. The statutory provision provides in relevant part:

> (1)    . . . in the case of injury arising out of a motor vehicle accident, the insurer shall pay without regard to fault, to the provider of services on behalf of the following persons who sustain accidental harm as a result of the operation, maintenance, or use of the vehicle, an amount equal to the personal injury protection benefits as defined in section 431:10C-103.5(a) . . . .

---

[4] Although the Hawaii Supreme Court concluded that the question of whether an insured could sue its insurer for non-payment of no-fault benefits was more properly a Rule 17(a) real party in interest question than one of standing, Liberty submits that because this Court cannot directly award Engle any relief under Hawaii's PIP law, discussed infra, Engle also lacks standing to pursue her breach of contract claim. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (to satisfy Article III, a party must demonstrate injury in fact; a causal connection between the injury and the conduct of which the party complains; and "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'"). However, because dismissal is also appropriate under Rule 17(a), Liberty does not further address the matter but respectfully reserves the right to do so should the Court disagree with its Rule 17(a) analysis.

> (a)  Any person, including the owner, operator, occupant, or user of the insured motor vehicle;

Id. (emphasis added.)  Likewise, Hawaii's current PIP law also prohibits a medical provider from seeking payment for services from the insured.  Haw. Rev. Stat., § 431:10C-308.5(f) (2001) provides:

> (f)    The provider of services described in section 431:10C-103.5(a) shall not bill the insured directly for those services but shall bill the insurer for a determination of the amount payable. The provider shall not bill or otherwise attempt to collect from the insured the difference between the provider's full charge and the amount paid by the insurer.

Hawaii's Rule 17(a), upon which the <u>Wilson</u> court based its analysis, is substantially the same as Fed. R. Civ. Proc., Rule 17(a).  In applying Hawaii's Rule 17(a), the court, in fact, relied on federal treatise commentary to reach the conclusion that the plaintiff there lacked the requisite interest in the outcome of the payment dispute to be a real party in interest.  <u>See</u> <u>Wilson</u>, <u>supra</u>, 89 Hawai'i at 48, 968 P.2d at 650, quoting from 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil* 2d § 1544 (1990) ("To determine whether the requirement that the action be brought by the real party in interest has been satisfied, the court must look to the substantive law creating the right being sued to see if the action has been instituted by the party possessing the <u>substantive right to relief</u>") (emphasis added).

10

After reviewing the referenced statutory scheme, the Hawaii Supreme

Court observed:

> . . . an insurer is only obligated to make direct payment to the insured .
> . . . [and the] statute does not confer upon the insured the right to
> receive payment of medical benefits on behalf of his or her provider.
> In fact, the statute designates billing/payment of medical expenses to
> flow directly from the insurer to the provider. See HRS § 431:10C-
> 304(1)(B). Therefore, as a matter of law, the insured plays no role in
> the billing/payment process for medical services.  Any dispute
> relating to the payment of medical services is strictly between the
> insurer and the provider.

> This view is further reinforced by HRS §§ 431:10C-308.5(e), wherein
> the provider is prohibited from collecting payment for medical
> services rendered by the provider directly from the insured . . . .

Id. at 49, 968 P.2d at 651.  In light of the foregoing, the court held that the

plaintiff-insured "was not a real party in interest with respect to her claim against

[her auto insurer] for no-fault benefits to satisfy her provider's unpaid bill." Id. at

50, 968 P.2d at 652.

The same result is required in this case.  Hawaii's PIP statutory

scheme remains unchanged from those provisions of its predecessor no-fault

scheme relied upon by the Wilson court.  The court's interpretation and application

of Rule 17(a) was based on federal law and is not in the least at odds with the law

of this Circuit.  See e.g., U-Haul Int'l., Inc. v. Jartran, Inc., 793 F.2d 1034, 1037

(9th Cir. 1986) (to determine whether a plaintiff is a real party in interest under

Rule 17(a), court "must look to the substantive law that governs [the] case").  As a

result, Engle is not the real party in interest to pursue a breach of contract claim against Liberty Mutual for denial of provider claims based on Dr. Lau's records review. Rather, Portner Orthopedic is the real party in interest to pursue the claim.

The <u>Wilson</u> court recognized a possible exception to its holding where a plaintiff alleged its carrier's failure to satisfy PIP claims prevented the insured from receiving sufficient PIP benefits to meet Hawaii's statutory tort threshold imposed by HRS § 431:10C-306(b). <u>Wilson</u>, 89 Hawaii at 50-51, 968 P.2d at 652-53. Such is not the case here, where it undisputed that Engle has passed the threshold. Accordingly, because she is not the real party in interest with respect to a breach of contract claim, Liberty Mutual is entitled to summary judgment on her claim for breach of contract.

C.    <u>Reliance on a Record Review Does Not Constitute Bad Faith</u>

    1.    <u>The Application of Section 431:10C-308.5(b) to Pure Record Reviews Was an Open Question of Law at the Time of Dr. Lau's Record Review</u>

The essence of Engle's bad faith claim is that Liberty Mutual improperly utilized a medical <u>records review</u> to assess the reasonableness and necessity of her provider treatments instead of a statutorily required <u>IME</u>.[5]

_____

    [5] Portner Orthopedic, as the medical provider, does not have a right of action for bad faith against Liberty Mutual. In the first place, the bad faith cause of action arises from the implied covenant of good faith and fair dealing that is implied in all contracts. <u>Best Place, Inc. v. Penn America Ins. Co.</u>, 82 Hawai'i

However, as noted most recently by the Hawaii Supreme Court in <u>Enoka v. AIG</u>

<u>Hawaii Ins. Co.</u>, 109 Hawai'i 537, 128 P.3d 850 (2006), "where an insurer denies

the payment of no-fault benefits based on 'an open question of law,' there is

'obviously no bad faith on the part of the insurer in litigating that issue.'" <u>Id.</u> at

552, 128 P.3d at 865 (quoting <u>Colonial Penn. Ins. Co. v. First Ins. Co. of Hawaii,</u>

<u>Ltd.</u>, 71 Haw. 42, 43-44, 780 P.2d 1112, 1114 (1989)) (brackets omitted).  In

<u>Enoka</u>, the court held that the plaintiff could <u>not</u> sustain a bad faith claim against

AIG based, in part, on the carrier's alleged failure to comply with the no-fault

denial disclosure provisions of HRS § 431:10C-304(3)(B) because the statute's

applicability to AIG's conduct involved open questions of law at the time of AIG's

denial.  109 Hawai'i at 552, 128 P.3d at 865; <u>see</u> <u>also</u> <u>Govt. Employees Ins. Co. v.</u>

<u>Dizol</u>, 176 F. Supp. 2d 1005, 1034 (D. Haw. 2001) (Kay, J.) (following a review of

_____

120, 123-24, 920 P.2d 334, 337-38 (1996).  Porter Orthopedic did not contract
with Liberty Mutual for insurance.

     Furthermore, in establishing the tort of bad faith in the insurance context, the
<u>Best Place</u> court recognized the "special relationship" created by the "unequal
bargaining position between the insured and the insurance company[.]" <u>Id.</u> at 128,
920 P.2d at 342 (citation omitted).  The court stated: "The implied covenant is
breached . . . when [the carrier's] conduct damages the very protection or security
which the insured sought to gain by buying insurance." <u>Id.</u> at 132, 920 P.2d at 346.
As the provider of health care services to a person who buys insurance, Porter
Orthopedic is not a beneficiary of the "security" or peace of mind that justifies the
imposition of liability against the insurer as explained in <u>Best Place</u>.  Thus, only
Engle, the insured, can assert a bad faith claim.

     Even if Porter Orthopedic could bring a bad faith claim, which it can not,
the claim would fail for all the reasons Engle's bad faith claim fails.

Hawaii case law on bad faith, "there was no bad faith denial of benefits when the insurer denied payment of benefits based on an unsettled question of law.").

The facts here are strikingly similar to those in <u>Enoka</u> in that Liberty Mutual's interpretation and application of Hawaii's "no fault" law formed the basis of Engle's bad faith claim. At the time Liberty Mutual asked Dr. Lau to review Engle's medical records, the question of whether an insurer may rely on a records review when investigating a motor vehicle PIP claim had not been addressed in Hawaii. As the law currently stands, conflicting decisions have emerged from the various tribunals, with this Court and the Insurance Commissioner ruling that the IME provisions of HRS § 431:10C-308.5 do not apply to record reviews, and two state court judges reaching the opposite conclusion.[6] Unless and until the issue is addressed by the Hawaii Supreme Court, there can be no question that the state of the law is unsettled. Inasmuch as Liberty's decision to use a record review was based on this open question of law, it cannot be liable for bad faith.

2.    <u>Liberty Mutual Did Not Act in Bad Faith</u>

In <u>Best Place, Inc. v. Penn America Ins. Co.</u>, 82 Hawai'i 120, 920 P.2d 334 (1996), the Hawaii Supreme Court determined that the appropriate test to

---

[6]    As stated in its Order, this Court is aware that on July 5, 2005, in <u>Sakoda v. AIG Hawaii Ins. Co., Inc.</u>, Civil No. 4-1-0436, Judge Bert I. Ayabe ruled that a record review was an IME under state law. <u>See</u> Order at 8-9. Judge Sabrina S. MacKenna recently followed Judge Ayabe's ruling in <u>Lee v. Liberty Mutual Fire Ins. Co.</u>, Civil No. 06-1-0024-0.

determine a breach of the common law duty of good faith and fair dealing, or "bad faith," is "the general standard set forth in <u>Gruenberg</u> and its progeny." <u>Id.</u> at 133, 920 P.2d at 347.

In <u>Gruenberg v. Aetna Ins. Co.</u>, 510 P.2d 1032 (Cal. 1973), the California Supreme Court defined the basic duty of an insurer to act in good faith in handling the claim of an insured:

> It is the obligation, deemed to be imposed by the law, under which the insurer . . . by refusing, <u>without proper cause</u>, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.
>
>     \*      \*      \*
>
> It is manifest that a common legal principle underlies all of the foregoing decisions; namely, that in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer <u>unreasonably and in bad faith</u> withholds payment of the claim of its insured, it is subject to liability in tort.

<u>Gruenberg</u>, 510 P.2d at 1037-38 (emphasis added). As noted by the United States District Court for the Central District of California in applying the same California law relied on in <u>Best Place</u>, the "implied covenant of good faith requires insurers to be reasonable, not flawless." <u>Aronson v. State Farm Ins. Co.</u>, 2000 U.S. Dist. LEXIS 6976, 2000 WL 667285 (C.D. Cal. 2000) at p*21.

Following the general standard in <u>Gruenberg</u>, the Hawaii Supreme Court focused upon the reasonableness of the insurer's conduct: "conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith." <u>Best Place</u>, 82 Hawai'i at 133, 920 P.2d at 347 (emphasis added). Additionally, "an erroneous decision not to pay a claim for benefits due under a policy does not by itself justify an award of compensatory damages. <u>Id.</u>, 920 P.2d at 347 (citing <u>Austero v. National Cas. Co.</u>, 148 Cal. Rptr. 653 (Ct. App. 1978)). "Rather the decision not to pay a claim <u>must be in 'bad faith.</u>'" <u>Best Place</u>, 82 Hawai'i at 133, 920 P.2d at 347.

For example, in <u>California Shoppers Inv. v. Royal Globe Ins. Co.</u>, 175 221 Cal. Rptr. 171 (Ct. App. 1985), a California case cited by <u>Best Place</u> for support on the standard for first-party bad faith, the court said in regards to withholding policy benefits "[b]ad faith implies unfair dealing rather than mistaken judgment." 221 Cal. Rptr. at 200 (citing <u>Critz v. Farmers Ins. Group</u>, 41 Cal. Rptr. 401 (1964) ("Bad faith implies unfair dealing rather than mistakes in judgment or poor prognostication.")).

Also, in <u>Austero v. National Cas. Co.</u>, 148 Cal. Rptr. 653 (Ct. App. 1978), another case cited by <u>Best Place</u> for support on the standard for first-party bad faith, the court stated that "it is essential that no hindsight test be applied. The reasonable or unreasonable action by the company must be measured as of the time

it was confronted with a factual situation which it was called upon to respond."
<u>Austero</u>, 148 Cal. Rptr. at 673.

Thus, the starting point for analysis of bad faith liability is an examination of the reasonableness of Liberty Mutual's conduct.  Here, this Court has already correctly ruled that Liberty Mutual did not violate the procedural requirements of HRS section 431:10-308.5(b) in utilizing a records review performed by a physician who was not selected by mutual agreement of the parties and was not of the same specialty as the provider.  <u>See </u>Order at 10.  That decision is the law of this case.  "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."  <u>Richardon v. United States</u>, 841 F.2d 993, 996 (9th Cir. 1988) (noting the exception where <u>controlling authority</u>, including an intervening decision of an intermediate appellate state court, has made a contrary decision of law on the same issues).  Under the law of this case, Liberty Mutual utilized a legal and acceptable means of evaluating Engle's claim for PIP benefits.  Thus, Liberty Mutual did not act in bad faith.

The fact that Dr. Lau recommended no further treatment  - a conclusion with which Plaintiffs disagree - simply highlights the fact that this case concerns a bona fide disagreement over coverage.  "[A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, even if the

court concludes the claim is payable under the policy terms, so long as there existed a genuine issue as [to] the insurer's liability." Franceschi v. American Motorists Ins. Co., 852 F.2d 1217, 1220 (9th Cir. 1988) (applying California law in affirming summary judgment in favor of insurer on breach of implied covenant of good faith and fair dealing.); see also Paulson v. State Farm Mut. Auto. Ins. Co., 867 F. Supp. 911, 914 (C.D.Cal. 1994) ("Court . . . must be able to address at the earliest possible stage the initial determination of whether, as a matter of law and based on undisputed facts, the insurer's actions are unreasonable and in bad faith."). The rational for this result is that the existence of a genuine coverage dispute means that neither side's position, including the carrier's, was unreasonable. See Guebara, supra, 237 F.3d at 992 (under California law, "a bad faith claim can be dismissed on summary judgment if the defendant [insurer] can show that there was a genuine dispute as to coverage"). Accord, Tomaselli v. Transamerica Ins. Co., 31 Cal. Rptr. 2d 433, 440 (Cal. Ct. App. 1994) ("[t]he mistaken withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under California law, does not expose the insurer to bad faith liability.") (emphasis added).

      No evidence exists that the decision to issue the no-fault denials was in bad faith -- in fact, Liberty Mutual's actions were guided by input from a doctor, even though, as recognized by this Court, "an insurer may deny benefits for

18

medical treatment without a doctor's review of any kind."  Order at 18 (citing

Weigel v. Liberty Mutual Fire Ins. Co., No. ATX-2002-134-P (D.C.C.A. Dec. 21,

2004)).

> Such a decision may be based on a nurse's opinion, or on
> a review by an insurance administrator with no medical
> training.  An IME certainly provides the insurer with
> more information on which to base an insurance decision,
> but the legislature nowhere required an IME or even a
> record review.

Order at 18.

Here, Liberty Mutual demonstrated its intention to proceed with the

utmost good faith in retaining, at its own expense, the services of a medical

provider to assist in its evaluation of Engle's claim for PIP benefits.  As noted in

Dr. Lau's report, "[w]hen initially seen in the emergency, [Engle] had no neck

pain, back pain nor extremity pain."  SCS at ¶ 6.  Dr. Lau further notes that

Engle's medical records indicate that "there were some complaints of pain of the

neck with rotating to the left" at a visit two weeks after the accident.  Id.  There

appeared to be no serious trauma on the date of the motor vehicle accident or

shortly thereafter, therefore Liberty Mutual could reasonably question whether

continued treatment five or more months later was reasonable and necessary.

Indeed, even if Plaintiffs had secured their own independent medical

evaluation that conflicted with the conclusions reached by Dr. Lau, summary

judgment in Liberty Mutual's favor would still be warranted. As explained by the court in <u>Benton v. Allstate Ins. Co.</u>, 2001 WL 210685, *7 (C.D. Cal. 2001):

> Moreover, it is clear that the directly and emphatically conflicting expert reports in this case gave rise to a genuine dispute regarding the value of plaintiff's claim. As noted above, 'investigations by a defendant's independent experts will permit the invocation of the [genuine dispute] doctrine and summary judgment for the defendant on a bad faith claim' in some cases. (citing <u>Guebara</u>, 237 F.3d at 994.)

"Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was 'a genuine dispute as to coverage.'" <u>Feldman v. Allstate Ins. Co.,</u> 322 F.3d 660, 669 (9th Cir. 2003). In short, unlike the normal case where a disputed issue of material fact precludes summary judgment under Fed. R. Civ. Proc., Rule 56(c), in the narrow context of insurance bad faith claims, a genuine issue of material fact may, in many cases, warrant summary judgment for the insurer. Ultimately, however, the subject bad faith claim pled in the instant Complaint is really about differences in statutory construction. Given that these differences arise at the very least from an unsettled area of the law, there was no bad faith in Liberty Mutual's use of a medical professional's advice as to Engle's PIP claim.

D.      Plaintiffs' Claim for Punitive Damages Fails as a Matter of Law

Engle pleads a cause of action for punitive damages based on Liberty Mutual's previously alleged conduct.[7] Punitive damages are <u>not</u> intended to compensate a plaintiff and are <u>not</u> to be awarded "for mere inadvertence, mistake, or errors of judgment." <u>Masaki v. General Motors Corp.</u>, 71 Haw. 1, 7, 780 P.2d 566, 571 (1989). "Something more than the mere commission of a tort is always required for punitive damages." <u>Id.</u>, 780 P.2d at 571 (citing W.P. Keeton, Prosser & *Keeton on the Law of Torts* § 2, at 9 (5th ed. 1984)). The standard is very high, for punitive damages may be awarded only where "the wrongdoer 'has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations'; or where there has been 'some willful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.'" <u>Masaki</u>, 71 Haw. at 13, 780 P.2d at 573 (quoting <u>Kang v. Harrington</u>, 587 P.2d 285, 291 (1978)). Punitive damages are awarded "only when the egregious nature of the defendant's conduct makes such a remedy appropriate" or "where the defendant's wrongdoing has been intentional

---

[7] Because Portner Orthopedic's claim is limited to breach of contract, punitive damages are not available to Portner. <u>See</u> <u>Francis v. Lee Enters., Inc.</u>, 89 Hawaiʻi 234, 244, 971 P.2d 707, 717 (1999) ("Hawaiʻi law will <u>not</u> allow a recovery in tort, including a recovery of punitive damages, in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract.") (emphasis in original).

and deliberate, and has the character of outrage." See Masaki, 71 Haw. at 6, 780 P.2d at 570.

Plaintiff must establish the foregoing elements not by a preponderance of the evidence, but by the higher "clear and convincing evidence" standard. Id. at 16, 780 P.2d at 575. The proof must "produce in the mind of the trier of fact a firm belief or conviction as to the allegation sought to be established." Id. at 14, 780 P.2d at 574.

Tran v. State Farm, 999 F. Supp. 1369 (D. Haw. 1998) is instructive on the issue of punitive damages in an insurance bad faith case. In that case, Chief Judge Ezra recognized that Hawaii law mandates that punitive damages be awarded only when the defendant has acted egregiously, intentionally, and deliberately, and with "a character of outrage frequently associated with a crime." Id. at 1377. The Court added that "[p]unitive damages are not awarded for mere inadvertence, mistake, or errors of judgment. Something more than the mere commission of a tort is always required for punitive damages." Id. (emphasis added) (citation and internal quotation marks omitted).

In Tran v. State Farm, the plaintiff had asserted that State Farm's: (1) "unjustifiable delay" in payment of uninsured motorist benefits; (2) alleged refusal to offer special damages; (3) refusal to explain alleged inconsistencies in negotiations; and (4) refusal to pay undisputed sums, all justified an award of

22

punitive damages.  999 F. Supp. at 1377.  The <u>Tran</u> plaintiff further claimed that State Farm was deliberately trying to "avoid making a fair and just offer under the policy's grant of coverage, and was trying to conceal its intentions."  <u>Id.</u>

The Court ruled against the plaintiff and granted State Farm partial summary judgment on the punitive damages claim.  The Court stated that even assuming that the acts alleged by Plaintiff were true, there was no showing that State Farm acted "wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference[,]" or that State Farm had done anything more than commit a tort.  <u>Id.</u> at 1377-78.  Thus, the Court held: "even if Plaintiff is able to prove breach of the covenant of good faith and fair dealing, Plaintiff is still required to make a showing that State Farm's actions were more than unreasonable, but were also done in a manner that exhibits conscious indifference to the consequences."  <u>Id.</u> at 1378.[8]

---

[8] Indeed, federal courts routinely dismiss punitive damages claims as a matter of law, even where there is evidence of bad faith.  <u>See</u>, <u>e.g.</u>, <u>Lange v. Penn Mut. Life Ins. Co.</u>, 843 F.2d 1175, 1182-83 (9th Cir. 1988) (upholding finding of bad faith but reversing award of punitive damages because "the evidence [was] insufficient as a matter of law to support an award of punitive damages"); <u>Pacific Group v. First State Ins. Co.</u>, 841 F. Supp. 922, 939-40 (N.D. Cal. 1993), rev'd on other grounds, 70 F.3d 524 (9th Cir. 1995) (despite evidence insurer acted unreasonably, there was no evidence to support punitive damages award); <u>Willis v. Midland Risk Ins. Co.</u>, 42 F.3d 607 (10th Cir. 1994) (reversing summary judgment for insurer on bad faith claim but affirming summary judgment for insurer on punitive damages claim); <u>Kirchoff v. American Cas. Co.</u>, 997 F.2d 401, 405-06 (8th Cir. 1993) (finding bad faith but reversing punitive damages award as a matter

Here, as with State Farm in <u>Tran v. State Farm</u>, there is a complete lack of evidence suggesting malicious intent on Liberty Mutual's part.  To defeat summary judgment, Engle will be required to provide sufficient evidence to reach the clear and convincing standard.  To meet the "clear and convincing" evidence standard, the evidence must not be merely consistent with the theory of malice, oppression, or fraud.  Rather, Engle must produce evidence that is inconsistent with any other explanation: "some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such non-iniquitous human failing."  <u>Tomaselli</u>, 31 Cal. Rptr. 2d at 444 n.14.

In this case, and as earlier demonstrated, there is no evidence of bad faith, much less the kind of intentional, reprehensible conduct that would justify the imposition of punitive damages.  The Complaint makes no allegations of fact which, even if presumed true, could rise to the level of willful and wanton conduct required by <u>Masaki</u>.  To the contrary, the alleged improper conduct was basing PIP denials on medical records reviews instead of on an IME including a physical examination.  Even if Liberty Mutual erred in opting to utilize a records review in lieu of an IME – a result this Court has already rejected – there is simply no reasoned way in which a fact finder could conclude Liberty's choice of medical

---

of law); <u>Hayes Bros., Inc. v. Economy Fire & Cas. Co.</u>, 634 F.2d 1119, 1124-25 (8th Cir. 1980) (same).

evaluative procedures implied "a spirit of mischief or criminal indifference to civil obligations." <u>Masaki</u>, 71 Haw. at 13, 780 P.2d at 573.

IV.    <u>CONCLUSION</u>

For all the foregoing reasons, Liberty Mutual respectfully request this Court grant its motion for summary judgment against all remaining claims brought by Plaintiff Tiara Engle.

DATED:  Honolulu, Hawaii, SEP 1 3 2006 _____.

_____
KENNETH J. MANSFIELD
R. JOHN SEIBERT
ELIZABETH A. ROBINSON

Attorneys for Defendant
LIBERTY MUTUAL INSURANCE
COMPANY