McCORRISTON MILLER MUKAI MacKINNON LLP

KENNETH J. MANSFIELD          #7227-0
R. JOHN SEIBERT               #5257-0
ELIZABETH A. ROBINSON         #7805-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
Telephone No.: (808) 529-7300
Facsimile No.:  (808) 524-8293
mansfield@m4law.com; rjs@m4law.com; erobinson@m4law.com

Attorneys for Defendant
LIBERTY MUTUAL FIRE INSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | | |
|---|---|---|
| TIARA ENGLE and PORTNER ORTHOPEDIC REHABILITATION, INCORPORATED,<br><br>Plaintiffs,<br><br>vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY; JOHN DOES 1-10, JANE DOES 1-10; DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, ROE "NON-PROFIT" CORPORATIONS 1-10; and  ROE GOVERNMENTAL ENTITIES 1-10,<br><br>Defendants.<br>_____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL NO. 04-00256 SOM BMK<br>(Other Civil Action)<br><br>DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' FIRST MOTION TO COMPEL PRODUCTION OF DOCUMENTS, FILED ON SEPTEMBER 7, 2006; DECLARATION OF KENNETH J. MANSFIELD; EXHIBITS "A" – "C"; CERTIFICATE OF SERVICE<br><br>HEARING<br>Date  :  October 4, 2006<br>Time  :  3:30 p.m.<br>Judge :  Hon. Barry M. Kurren<br><br>Trial Date:  February 13, 2007 |

146070.1

## TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................. 2

III.  DISCUSSION ..................................................................................... 3

      A.    Standard of Review ............................................................... 3

      B.    Plaintiffs' First Request for Production of Documents. ........................ 4

      C.    Plaintiffs' Second Request for Production of Documents ................. 10

IV.   CONCLUSION .................................................................................. 18

TABLE OF AUTHORITIES

PAGE(S)

**FEDERAL CASES**

Hickman v. Taylor,
329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947)................................................. 3

**STATE CASES**

State v. Kam,
69 Haw. 483, 748 P.2d 372 (1988) ................................................................. 5, 15

State v. Lester,
64 Haw. 659, 649 P.2d 346 (1982), cert. denied,
502 U.S. 915, 112 S. Ct. 318, 116 L. Ed. 2d 259 (1991)....................................... 5

**FEDERAL RULES**

Fed. R. Civ. P. Rule 26(b)(2)(i)........................................................................ 13

Fed. R. Civ. P. 26(b)(2)(iii) ........................................................................ passim

**FEDERAL REGULATIONS**

45 C.F.R. § 160.103........................................................................................ 6

45 C.F.R. § 164.502(a) ............................................................................... 5, 6

**STATE REGULATIONS**

LR37.1 ................................................................................................... 1, 2

DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY'S
MEMORANDUM IN OPPOSITION TO PLAINTIFFS' FIRST MOTION TO
<u>COMPEL PRODUCTION OF DOCUMENTS, FILED ON SEPTEMBER 7, 2006</u>

Defendant Liberty Mutual Fire Insurance Company ("Liberty

Mutual"), by and through its attorneys, McCorriston Miller Mukai MacKinnon

LLP, hereby respectfully submits this memorandum in opposition to Plaintiffs

Tiara Engle and Portner Orthopedic Rehabilitation Incorporated's ("Plaintiffs")

First Motion to Compel Production of Documents, Filed on September 7, 2006.

I.      <u>INTRODUCTION</u>

Plaintiffs' Motion seeks Court endorsement of overbroad and intrusive

discovery requests.  Plaintiffs argue only that the requested documents are relevant,

thereby altogether ignoring the other valid objections Liberty Mutual has raised,

including the following: (1) the discovery requests are grossly overbroad; (2) the

documents requested are protected by the attorney-client privilege and/or attorney

work product doctrine; (3) the discovery requests seek information which is

proprietary in nature; and (4) the discovery requests violate the right to privacy of

the affected individuals, including both Liberty Mutual insureds and Liberty

Mutual employees.

Moreover, the Motion contains no substantive discussion of Liberty

Mutual's timely responses and objections to the document requests, Liberty

Mutual's explanations and attempts to resolve these disputes at the LR37.1 meet

and confer, or Liberty Mutual's comprehensive letter following counsel's meet and confer. Instead of reciting this history, advising the Court of those requests for which there is no longer any dispute, and squarely responding to Liberty Mutual's objections on the requests where the parties have been unable to reach agreement, Plaintiffs instead seek to thrust upon the Court the obligation of sifting through this matter from scratch, thereby frustrating the very purpose behind this Court's Local Rules on discovery disputes. Accordingly, and for all the reasons set forth below supporting Liberty Mutual's position, Plaintiffs' motion to compel should be denied.

II.    <u>BACKGROUND</u>

Plaintiffs' motion is silent as to Liberty Mutual's responses to Plaintiffs' First and Second Requests for Production of Documents. Those responses are attached hereto as Exhibits "A" and "B" to the Declaration of Kenneth J. Mansfield ("Mansfield Dec."). Liberty Mutual produced responsive documents in January, 2005 and again in April, 2005. More recently, on April 10, 2006, counsel for the parties met and conferred regarding the remaining discovery pursuant to LR37.1. Promptly following the meet and confer, on April 13, 2006, Liberty Mutual wrote Plaintiffs a detailed letter regarding its position on the remaining disputed items. <u>See</u> Exhibit "C" to the Mansfield Dec. Shortly thereafter, the parties agreed to participate in a private mediation with the Honorable Marie N.

Milks (Ret.) to explore resolution.  No settlement was reached.  Without providing a substantive response to Liberty Mutual's April 13th letter, Plaintiffs filed the instant motion seeking a blanket ruling from this Court "directing [Liberty Mutual] to produce for inspection and copying all of the requested documents set forth in Plaintiff's first and second request for production."  Motion at 6.

III.    DISCUSSION

A.    Standard of Review

Liberty Mutual acknowledges that the modern discovery devices of Federal Rules of Civil Procedures Rules 26-37 generally provide for wide-ranging pretrial discovery.  See Fed. R. Civ. P. 26-37.  The scope of discovery, however, is not limitless.  Discovery should be limited when it is being conducted in bad faith or in such a manner as to harass, annoy, embarrass or oppress the person subject to the inquiry.  Hickman v. Taylor, 329 U.S. 495, 507-08, 91 L. Ed. 451, 67 S. Ct. 385, 390-392 (1947)).  Rule 26 (b) provides further limitations when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege.  Id. Likewise, the frequency or extent of discovery may be curtailed if the Court determines that the material sought is unreasonably cumulative or obtainable from a more convenient source, if there has already been ample opportunity for discovery, or if discovery is unduly burdensome or expensive.  Fed. R. Civ. P. 26(b)(2)(iii).

3

B.    <u>Plaintiffs' First Request for Production of Documents.</u>
      <u>Requests Nos. 1 and 2 -  Engle's Claim File</u>

All responsive documents have been produced, with the exception of two objectionable areas: (1) claim file entries concerning other insureds; and (2) claim file entries made after Plaintiffs filed the instant suit.

Concerning the first matter, Liberty Mutual cannot release any information from its files concerning other insureds without their consent.  Engle's accident involved other individuals, who likewise submitted no-fault claims.  Those other insureds have not agreed to the release of their private health information as part of this lawsuit.  Thus, any entries concerning those individuals have been redacted.

Likewise, any entries made after Plaintiffs filed suit are protected by the work product doctrine and/or the attorney-client privilege.  The entries are, at that point, certainly made in anticipation of litigation, and some necessarily reflect communications with counsel.  Plaintiffs' motion is silent on this issue, and accordingly Liberty Mutual's objections should be sustained.

<u>Request No. 3 – All other IMEs and Record Reviews performed by</u>
<u>Dr. Clifford Lau</u>

Liberty Mutual has two primary objections to this request.  First, the request seeks the release of confidential health information concerning other insureds not party to this action.  Simply redacting names, as Plaintiffs suggest, would be totally

4

insufficient to protect the individuals discussed in detail in those reports.  An IME

or record review contains a great deal of other personally identifiable information,

including, for example, physical information and historical information, that

neither Plaintiffs nor Liberty Mutual have authority to disclose absent consent of

those insureds.  Plaintiffs do not address these privacy interests, which are

expressly protected by the Hawaii Constitution :

> The right of the people to privacy is recognized and shall not be
> infringed without the showing of a compelling state interest. The
> legislature shall take affirmative steps to implement this right.

See Article I, Section 6 of the Hawaii Constitution.  That clause "gives each and

every individual the right to control highly personal and intimate affairs of his own

life." State v. Kam, 69 Haw. 483, 492, 748 P.2d 372, 378 (1988); see also State v.

Lester, 64 Haw. 659, 667, 649 P.2d 346, 353 (1982), cert. denied, 502 U.S. 915,

112 S. Ct. 318, 116 L. Ed. 2d 259 (1991) (Article I, section 6 relates to privacy in

the informational and personal autonomy sense, encompassing the ability of a

person to control the privacy of information about himself, such as unauthorized

public disclosure of embarrassing or personal facts about himself.).

Moreover, under HIPAA, "[a] covered entity may not use or disclose

protected health information," except as provided.  45 C.F.R. § 164.502(a).

"Covered entity" means a health plan, a health care clearinghouse, and a health

care provider.  Id. § 160.103.  Dr. Lau is a health care provider and is thus a

covered entity under HIPAA. "Protected health information" is broadly defined as individually identifiable health information that is "[t]ransmitted by electronic media[,] [m]aintained in electronic media[,] or [t]ransmitted or maintained in any other form or medium." Id. As such, virtually all health information created or in the possession of a covered entity is protected.[1] If the intent of the proposed discovery is to evaluate Dr. Lau's alleged bias, it is not necessary that Plaintiffs request IME reports or record reviews of individuals unrelated to the lawsuit. At Dr. Lau's upcoming deposition, Plaintiffs' attorneys can question him directly as to his reports and his recommendations. It is unnecessary for Plaintiffs to request the production of IME reports and record reviews of individuals unrelated to this lawsuit in order to evaluate such alleged bias.

Second, it would be unduly burdensome, time consuming and expensive for Liberty Mutual to comply with this request, as the requested documents are not readily available to Liberty Mutual. Liberty Mutual does not maintain a separate file of Dr. Lau's record reviews. Rather, any record reviews would be contained

---

[1] "Health information" is defined as "any information, whether oral or recorded in any form or medium" that is "created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse" and "[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual." 45 C.F.R. § 160.103. "Individually identifiable health information" is health information that identifies the individual. Id. § 160.103.

within their corresponding claim files.  Determining which files might contain

record reviews, and actually obtaining such record reviews would be an extremely

time consuming and likely very expensive undertaking.  Actually producing these

documents would require having Liberty Mutual's Massachusetts Home Office

prepare a spreadsheet detailing payments made to Dr. Lau.  Then, assuming the

payments are cross-referenced to specific claim numbers, Liberty Mutual would

then have to send the list of claim numbers to its storage facility in Massachusetts,

retrieve all corresponding claims files, and ship them to Honolulu.  At that point,

someone would have to physically review each file to look for Dr. Lau's IME and

record review reports.  The time and expense associated with such a task is

incalculable.  Liberty Mutual maintains that this process would be unduly

burdensome, time consuming and expensive, and that the overwhelming burden

and expense of this proposed discovery outweighs its likely benefit.  See Fed. R.

Civ. Pro. 26(b)(2)(iii).

<u>Request No. 4 – Claims Manuals</u>

The parties have resolved this request.  The Hawaii office of Liberty Mutual

has only one responsive document in its possession -- a "No-Fault Initiative

Handbook" (the "Handbook"), which contains highly sensitive, proprietary and

confidential information reflecting the internal business practices and procedures

Liberty Mutual uses in handling claims.  Liberty Mutual has agreed to produce the

relevant portions of the Handbook pursuant to a stipulated protective order.

Liberty Mutual respectfully insists on a protective order because the Handbook

contains highly sensitive, proprietary and confidential information reflecting the

internal business practices and procedures Liberty Mutual uses in handling claims.

The potential injury that would flow from misuse or disclosure of the Handbook is

patent:  Liberty Mutual's market position and competitive advantage within the

insurance industry would be jeopardized if the materials were used outside the

context of this litigation.

Request No. 5 – Contracts with Dr. Lau; letters to/from Dr. Lau

As it has previously advised Plaintiffs, Liberty Mutual has no written

contract with Dr. Lau.  To the extent Plaintiffs still seek all letters to and from Dr.

Lau, Liberty Mutual stands by its objections.  First, the request, which has no time

limitation, is grossly overbroad.  Secondly, as with Request No.3, the request seeks

the release of confidential health information concerning other insureds not party

to this action, and those records should not be produced without those insureds'

consent.  Third, as with Request No.3, it would take an incredible amount of time

and resources to locate and retrieve such documents, and as such the burden and

expense of this proposed discovery outweighs any likely benefit.  See Fed. R. Civ.

Pro. 26(b)(2)(iii).

<u>Request No. 6 – the Applicable Insurance Policy</u>

There is no dispute concerning this request, as the insurance policy has been produced.

<u>Request No. 7 – All Documents Concerning other Claim Denials of other Insureds</u>

This request is grossly overbroad, intrusive and harassing.  Plaintiffs seek all documents concerning all denials issued to other insureds arising from a record review by any doctor.  *Plaintiffs are asking for the entire files of other insureds without their permission.*  Liberty Mutual has no authority to release such information, even it was readily available.  Likewise, the information is <u>not</u> readily available.  As has been explained to Plaintiff's counsel, Liberty Mutual does not separately maintain records of no-fault denials and/or the basis of those denials.  Therefore, as with Plaintiffs' other similar requests for information from other insureds' files, compliance with this request would require an actual physical review of all documents that fall within the scope of the request.  This would take an incredible amount of time and resources to locate and retrieve such documents.  Accordingly, and in addition to the aforementioned reasons, Federal Rule of Civil Procedure Rule 26(b)(2)(iii) requires that the discovery be denied on the grounds that "the burden or expense of the proposed discovery outweighs its likely benefits."

C.    <u>Plaintiffs' Second Request for Production of Documents.</u>

      <u>Request Nos. 1-2 – Documents related to Engle's Claim.</u>

All responsive documents have been produced, with the exception of two objectionable areas: (1) claim file entries concerning other insureds; and (2) claim file entries made after Plaintiffs filed the instant suit.

Concerning the first matter, Liberty Mutual cannot release any information from its files concerning other insureds without their consent. Engle's accident involved other individuals, who likewise submitted no-fault claims. Those other insureds have not agreed to the release of their private health information as part of this lawsuit. Thus, any entries concerning those individuals have been redacted.

Likewise, any entries made after Engle filed suit are protected by the protected by the work product doctrine and/or the attorney-client privilege. The entries are, at that point, certainly made in anticipation of litigation, and some necessarily reflect communications with counsel. Plaintiffs' motion is silent on this issue, and accordingly Liberty Mutual's objections should be sustained.

      <u>Requests Nos. 3-6 – All records concerning all PIP denials arising</u>
      <u>from record reviews from 2002 to 2005.</u>

Liberty Mutual has two primary objections to this request. First, Plaintiffs' request seeks the entire no-fault files of individuals not a party to this action.

These individuals have constitutionally and statutorily protected privacy interests in that information, and thus it cannot be produced without their consent.

Secondly, in addition the problem of releasing of confidential health information concerning other insureds, Liberty Mutual does not have this information readily available. As with Plaintiffs' requests regarding Dr. Lau, responding to these requests would be incredibly burdensome, time consuming and expensive. The only way for Liberty Mutual to respond would be to have its information systems department in Boston prepare a report listing every payment to a provider for IMEs and/or record reviews since 2002. Presuming each of those payments is tied to a related claim number, Liberty Mutual would then have to physically retrieve each of those claim files from storage, ship those files to Honolulu, and then physically review every single file to identify claims resulting in denials based upon records reviews. Liberty Mutual maintains that the burden and expense of this proposed discovery outweighs its likely benefit, and the request should therefore be denied. See Fed. R. Civ. Pro. 26(b)(2)(iii).

Requests Nos. 7-10: Copies of all PIP denials based on IMEs from 2002-2005.

Liberty Mutual again has two primary objections to this request. First, the requested PIP denials would necessarily implicate protected private health

information of non-parties, and such information cannot be produced without those parties' consent.

Second, Liberty Mutual does not have this information readily available. Obtaining copies of all PIP denial forms based upon physical examinations would involve the same process as the foregoing requests. The only way for Liberty Mutual to respond would be to have its information systems department in Boston prepare a report listing every payment to a provider for IMEs and/or record reviews since 2002. Presuming each of those payments is tied to a related claim number, Liberty Mutual would then have to physically retrieve each of those claim files from storage, ship those files to Honolulu, and then physically review every single file to identify claims resulting in denials based upon physical examinations. Liberty Mutual maintains that this process would be unduly burdensome, time consuming and expensive, and that the burden and expense of this proposed discovery outweighs its likely benefit. See Fed. R. Civ. Pro. 26(b)(2)(iii).

> Request No. 11 – Corporate documents regarding the decision to use records reviews instead of independent medical exams.

As Plaintiffs have been advised, there are no such documents.

> Requests Nos. 12-15 – Other lawsuits, arbitrations and/or administrative hearings.

This request seeks information which is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence. Moreover, other lawsuits

and administrative hearings are public documents available at court and the DCCA, which the Plaintiffs can obtain just as easily as Liberty Mutual. "A court must limit the frequency or extent of the discovery methods otherwise permitted under the Federal Rules of Civil Procedure and by any local rule if the discovery sought is available from another source that is more convenient, less burdensome, or expensive." 6 James Wm. Moore et al., <u>Moore's Federal Practice</u> §26.60[3]; <u>see also</u> Fed. R. Civ. Pro. Rule 26(b)(2)(i).

Any non-public information from a private arbitration also carries with it concerns over privileged information and confidential health information. To produce this information itself, Liberty Mutual would have to create a spreadsheet of payments made to defense counsel, then contact those defense attorneys and review all of their Liberty Mutual files for responsive information. All responsive information would then have to be reviewed for privileged or otherwise protected information. Liberty Mutual maintains that this process would be unduly burdensome, time consuming and expensive, and that the burden and expense of this proposed discovery outweighs its likely benefit. <u>See</u> Fed. R. Civ. Pro. 26(b)(2)(iii).

<u>Requests Nos. 16-17 – Claims Manuals.</u>

Liberty Mutual has one responsive document, the Handbook, which it will produce pursuant to a protective order.

<u>Requests Nos. 18-19 – Documents Related to the Advice of Counsel Defense</u>

Liberty Mutual has not asserted the advice of counsel defense, so there are no responsive documents to these requests.

<u>Requests Nos. 20-23 – Personnel Files of Liberty Mutual Employees</u>

Plaintiffs have requested the entire personnel files of the Liberty Mutual adjusters who had any involvement in Engle's claim. The documents at issue in this request merit special protection. Clearly, the discoverability of personnel files must be balanced against the competing interests that Liberty Mutual and its affected employees have in the maintenance of the confidentiality and privacy of the internally generated personnel records and evaluations.

The employees' records involved in this case were intended to be confidential, and there are strong reasons for preventing their disclosure. First, revealing the contents of the employee files, which were prepared without input by their subjects, and which are the kind of materials which the employees justifiably expect to be kept confidential, would invade the employees' privacy. Unlike the federal right to privacy, which originates from a broad interpretation of the due process clause of the fourteenth amendment or emanations from the ninth amendment, the Hawaii Constitution expressly protects the right of privacy for Hawaii citizens. <u>See</u> Article I, Section 6 of the Hawaii Constitution (providing in

14

relevant part that "the right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest").  That clause "gives each and every individual the right to control highly personal and intimate affairs of his own life." State v. Kam, 69 Haw. 483, 492, 748 P.2d 372, 378 (1988).

Second, an important broader purpose is served by keeping employee personnel files confidential.  Liberty Mutual and other insurance companies might well hesitate to make candid evaluations of their staffs if such documents were made subject, as a matter of course, to discovery in civil actions.  If discovery of such documents is generally allowed, insurers might cease to frankly criticize and rate their own performance, for fear that any written evaluations they make might be used against them or their employees in a lawsuit.  By thus impairing the free flow of candid communications in insurance companies, breaching the confidentiality of such records could seriously hamper the ability of insurers, and ultimately the profession, to maintain their standards and improve their performance.

Notwithstanding the foregoing, in an effort to resolve this issue, Liberty Mutual has offered to produce any such documents relating to bonuses, raises, incentives, gifts, grants, rewards, prizes, pay increases, recognition, promotions and/or anything of value provided as a result of reducing or lessening PIP claim

payments, PIP expenditures, PIP losses, or PIP payments during the referenced time period.

<u>Request No. 24 – Claims Manuals, Guidelines, Policies</u>

Liberty Mutual has one responsive document, the Handbook, which it will produce pursuant to a protective order.

<u>Request No. 25 – All Records including IRS Forms Reflecting Amounts Paid to Doctors from 1999-2005 for record reviews and physical examinations.</u>

This request is overbroad, and it seeks information not reasonably calculated to lead to the discovery of admissible evidence. Further, the request also seeks documents containing confidential personal financial information. Liberty Mutual has informed Plaintiffs that it is willing to compile a list of the doctors encompassed by the requests, allowing Plaintiffs to then contact those doctors directly for their personal financial information.

<u>Requests Nos. 26-31 – All documents reflecting the amount of PIP benefits paid in each year from 2000-2005.</u>

The request, as drafted, is grossly overbroad and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, as a compromise, Liberty Mutual will look for a responsive document indicating the amount of PIP benefits paid in each referenced year.

Request No. 32 - Corporate documents regarding the decision to use records reviews instead of independent medical exams.

As Liberty Mutual previously advised Plaintiffs, there are no such documents.

Request No. 33 – All documents reflecting how much Liberty Mutual paid for record reviews and/or physical examinations of claimants from 2002-2005.

The request, as drafted, is grossly overbroad and seeks information not reasonably calculated to lead to the discovery of admissible evidence.  Further, Liberty Mutual previously advised Plaintiffs, there are no documents summarizing the amounts paid for record reviews and/or physical examinations in a given year.

Request No. 34 – All documents reflecting the amount of PIP premiums Liberty Mutual received in 2002-2005.

The request, as drafted, is overbroad, and it seeks information not reasonably calculated to lead to the discovery of admissible evidence.  Nevertheless, Liberty Mutual has advised Plaintiffs that it will look for a responsive document indicating the amount of PIP premiums paid in each referenced year.

Request No. 35 – Advertising.

Liberty Mutual's advertising is handled at a national level.  Therefore, there are no responsive documents for Hawaii alone.

17

IV.    <u>CONCLUSION</u>

Based on the foregoing, Defendant Liberty respectfully requests that the

Court deny Plaintiffs First Motion to Compel Production of Documents.

DATED:  Honolulu, Hawaii, September 15, 2006.

_____
KENNETH J. MANSFIELD
R. JOHN SEIBERT
ELIZABETH A. ROBINSON

Attorneys for Defendant
LIBERTY MUTUAL INSURANCE
COMPANY