ORIGINAL

Of Counsel:
SHIM & CHANG

ROY K. S. CHANG       #1733-0
HARVEY M. DEMETRAKOPOULOS #5033-0
333 Queen Street, Suite 900
Honolulu, Hawaii       96813
Telephone No. (808)524-5803

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 2 2 2006

at 1 o'clock and 40 min P M
SUE BEITIA, CLERK

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TIARA ENGLE and PORTNER ORTHOPEDIC REHABILITATION, INCORPORATED,<br><br>Plaintiffs,<br><br>vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATION 1-10; DOE PARTNERSHIPS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10; and ROE GOVERNMENTAL ENTITIES 1-10,<br><br>Defendants. | CIVIL NO. 04 00256 (SOM) (BK)<br>(Other Civil Action)<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' FIRST MOTION TO COMPEL PRODUCTION OF DOCUMENTS FILED SEPTEMBER 7, 2006; CERTIFICATE OF SERVICE**<br><br>Hearing:<br>Date:   10/4/2006<br>Time:   3:30 P.M.<br>Judge:  BARRY M. KURREN<br><br>Trial Week: February 13, 2007 |

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFFS' FIRST MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FILED SEPTEMBER 7, 2006

In Allstate v. Scroghan, 851 N.E.2d 317 (Ind.App.2006), a plaintiff in a bad faith action sought discovery of "all documents relating to bad faith claims or lawsuits filed against defendant, Allstate Insurance Company, arising out of

uninsured claims initiated by Allstate's own insureds since 1990". Id., 851 N.E.2d at 323. As in the present case, the in insurer argued undue burdensomeness. The court limited the discovery to documents relating to claims against Allstate in Indiana, (the state where the suit was brought) and limited the time span to 1994-1997. (three years prior to the injury at issue.) Id. The appellate court found that this was within the trial court's discretion, so long as a protective order was also permitted regarding the confidentiality of the discovery. Id. 851 N.E.2d at 325.

Those general principles apply here as well. Plaintiffs have previously agreed to a protective order regarding distribution of materials discovered. Plaintiff has also limited the discovery request to denials of claims in Hawaii, and limited the years requested. The discovery should be permitted.

In Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169 (E.D. Penn. 2004), the court stated:

> It is well settled that the party wishing to obtain a protective order has the burden of demonstrating that "good cause" exists for the order. [Cit.Omit.] Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity . . . Broad allegations of harm, unsubstantiated by specific examples or articulated

2

>      reasoning, do not support a good cause
>      showing. [Cit. Omit.]

Id., 224 F.R.D. at 175.

The court further stated:

>      While there are some courts that have chosen
>      to limit discovery in bad faith insurance
>      cases after considering individual
>      circumstances, we disagree with Defendant's
>      assertion that the case law broadly limits
>      discovery in all of such cases.  Rather, we
>      conclude that **courts have consistently held
>      that when a bad faith policy or practice of
>      an insurance company is applied to the
>      specific plaintiff, the plaintiff is
>      entitled to discovery and ultimately present
>      evidence of that policy or practice** at trial
>      in order to prove that the insurer
>      intentionally injured the plaintiff and **to
>      show the insurer's reprehensibility and
>      recidivism in order to assist the jury in
>      calculating appropriate punitive damages.**

Id., 224 F.R.D. at 176. (Boldface added.)

Here, as set forth in the original motion, Plaintiff is not simply asserting that Liberty Mutual improperly and unfairly denied payment of Tiara Engle's medical bills, and that even after Liberty Mutual received x-ray reports and an MRI report indicating objective findings of injury to Tiara Engle, it failed to reevaluate the claims for payment of the treatment billings in light of the additional information. Plaintiff needs to be able to also discover and prove a pattern and repetitive practice in Hawaii by Liberty Mutual of denying payment to Hawaii insureds on the same flimsy

3

basis of a letter written by a doctor who never interviewed the injured persons and never examined the injured persons. This is what will allow the jury to return a punitive damages award to stop Liberty Mutual's practice of denying statutory PIP claims in Hawaii without conducting a reasonable investigation of all available information. Whether an IME was a reasonable basis for an insurer to discontinue benefits is a question of fact. Atiyeh v. Liberty Mutual, 185 F.Supp.2d 436 (E.D. Penn. 2002.) The jury in this case should be permitted to know how many times Liberty Mutual has denied benefits to Hawaii insureds on this basis, and how much money it has saved by doing so. This punitive damages case goes beyond just Tiara Engle's bills and the handling of her claim, and so too must the discovery. As stated by the Hawaii Supreme Court in Best Place, Inc. v. Penn America Ins. Co., 82 Haw. 120, 920 P.2d 334 (1996):

> [P]unitive damages may not be awarded in a bad faith tort case unless the evidence reflects "something more" than the conduct necessary to establish the tort. More specifically, the plaintiff must prove by clear and convincing evidence that "the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some willful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences". [Cit.Omit.]

4

Id., 82 Haw. at 134.

Liberty Mutual asserts it would be burdensome for it to reveal how many times it has used a hired doctor's letter to issue denials of benefits in Hawaii. Its own employees have indicated that they can't even begin to count or give an estimate as to how many times it has occurred, even in the single year of 2003. Liberty Mutual's clear motivation is to avoid allowing Plaintiffs access to evidence that would permit the fact finder to consider imposing a significant punitive damages award. Avoiding disclosure of evidence that would make the party "look bad" is not a suitable basis to bar discovery of clearly relevant information.

Plaintiffs reply to Liberty Mutual's objections to each production request in turn:

<u>First set of document requests:</u>

<u>Requests No. 1 and 2.</u>  Defendant redacted various items, including the "reserves" set by Liberty Mutual. Such information is discoverable. In this case the "reserve", i.e. how much Liberty Mutual decided it would pay out on Tiara Engle's PIP claim, was set within one month of the accident, without any x-rays or MRI being done. Liberty Mutual unilaterally decided how much of the $20,000 PIP policy it was willing to pay out, and it appears that once that amount was reached, Liberty Mutual terminated the

5

benefits by having Dr. Lau write a letter saying that he "would have expected an 18 year old to heal within 6-8 weeks". Even after receiving the x-ray and MRI reports, Liberty Mutual failed to ask Dr. Lau to consider those test results and tell Liberty Mutual whether they would alter his opinions. The amount set as a reserve in this case, and whether there were any changes to that amount, is discoverable to indicate and reflect the state of mind and intentions of the claims handler. In Grange Mut. Ins. Co. v. Trude, 151 S.W.3d 803 (Ky 2004) the court addressed discoverability of reserves and how they were set in a bad faith case:

> The relevance of procedures for setting reserves to a bad faith claim seems obvious. Reserve setting procedures are controlled in part by statute. Evidence of Grange's reserve setting procedures would help show whether Grange is following the statutory and regulatory requirements and whether the specific system for setting reserves is aimed at achieving unfairly low values. We find that this evidence is relevant to the bad faith claim.

Id., 153 S.W.2d at 812.

In Tackett v. State Farm Fire and Ins., 558 A.2d 1098, (Del.Super. 1988), the court stated that in a bad faith claim:

> the strategy theories, mental impressions and opinions of [the insurer's] agents concerning the ... claim are directly at

6

> issue. When mental impressions and the like are directly at issue in a case, courts have permitted an exception to the strict protection of Rule 26(b)(3) and allowed discovery. *Id*.
> Having stated the above, it follows *a fortiori* that reserve figures which are the product of mental impressions, opinions and conclusions of the insurer's agents are likewise discoverable in the context of the case at bar. *Groben v. Travelers Indemnity Company*, N.Y.Supr., 49 Misc.2d 14, 266 N.Y.S.2d 616, 619 (1965) and *Town of Nassau v. Phoenix Assur. Co. of New York*, Sup.Ct.App.Div., 57 A.D.2d 992, 394 N.Y.S.2d 319, 320 (1977). In my view the cases of *North Georgia Lumber and Hardware v. Home Ins. Co.*, 82 F.R.D. 678 (N.D.Ga.1979) and *Union Carbide Corp. v. Travelers Indem. Co.*, 61 F.R.D. 411 (W.D.Pa.1973) are distinguishable in that *North Georgia Lumber* does not specifically hold that reserve figures are not subject to discovery and *Union Carbide Corp.* is not a first party bad faith claim. In *Groben* the court essentially accepted the "at issue" exception to the privilege stating that:
> Examination with respect to the reserve may develop evidence on the issue of the defendant's bad faith. Bad faith is a state of mind which must be established by circumstantial evidence. The actions of defendant in respect to the reserve are relevant. Negligent investigation and uninformed evaluation of the worth of the ... claims goes to the heart of the case since serious and recurring negligence can be indicative of bad faith. Defendant's actions on the reserve may have a direct bearing on the issue. *Id* 266 N.Y.S.2d at 619.

Id., 558 A.2d at 1105.

Request No. 3. Liberty Mutual has adopted procedures that its says makes it difficult to locate and produce

7

information regarding the doctor it has hired on numerous untold occasions to provide favorable reports to support denials of claims, and now tells this court that because it is "difficult" to locate the information, it should not be required to produce it. The court should not allow this. As to the privacy concerns raised by Liberty Mutual, Plaintiff has previously indicated, and indicates here again, that Plaintiff is not interested in any such identifying information, instead it is the language used by Dr. Lau that is sought. It is very likely the court will see numerous repeated reports by Dr. Lau stating that the injured person should have resolved their injuries within 6-8 weeks of the subject auto accident, no matter who the individual insured was or what the nature of their injuries was. Liberty Mutual states that "at Dr. Lau's upcoming deposition, Plaintiff's attorneys can question him directly as to his reports and his recommendations". (Defendant's Memorandum in Opposition, p, 6) What we will likely see is Dr. Lau claiming that he cannot recall the other reports, that he does so many he cannot remember any details. He, like Liberty Mutual, will likely try to cover and hide his specific acts by claiming that it is too difficult to remember them all. That is why we need the reports. The fact finder should be able to see and hear how many times Liberty Mutual has relied upon and

8

paid this same doctor to render favorable letter opinions upon which medical benefits were then terminated by Liberty Mutual.

Request No. 4. This request was resolved by a supplemental production from Liberty Mutual on September 15, 2006, after the filing of this motion.

Request No. 5. This issue is the same as Request No. 3. The procedure described by Liberty Mutual would work.

Request No. 6. This issue has been resolved.

Request No. 7. Once again, as with Request No. 3, Liberty Mutual asserts that because it has done something so many times, in so many claims, it cannot possibly be expected to produce the documents showing what it did. This "problem" is not the result of an overbroad and unwarranted discovery request. This is the result of Liberty Mutual having adopted a policy of prematurely terminating benefits to Hawaii insured by obtaining a letter from a doctor who did not see the injured people, and, if the present case is any indication, was not provided all of the relevant medical information that came into Liberty Mutual's possession. Moreover, given that Liberty Mutual has faced litigation numerous times over its denials of PIP benefits in Hawaii, good management practices would have made sure that the records of how it was handling such PIP claims, and proper

9

documentation of its denials practices, would have been kept separately and available to support Liberty Mutual and to establish that it handles such matters in a proper manner. Instead Liberty Mutual acts as though it never contemplated that anyone would ever question its practices and policies, which is very likely far from accurate.

<u>Second set of production requests</u>:

<u>Requests 1 and 2</u>. As before, Liberty Mutual produced redacted records. The redacted information should also be produced, as described in Request No.1 at the outset of this memorandum.

<u>Requests No. 3-10.</u> The case cited in our motion to compel explains our need for this information. In order to present evidence to warrant punitive damages, Plaintiffs need discovery to show how many times the insurer has done the same wrongful acts in this State. This is a bad faith case, based upon the retention of a doctor to render a letter opinion to support a termination of medical benefits. This doctor has been used numerous times by Liberty Mutual for the same purpose, and presumably has rendered medical opinions where, as here, he was not asked to see or examine the injured person, and was not provided with all of the relevant medical records and information that came into Liberty Mutual's possession. In order to properly present evidence

10

to support Tiara Engle's punitive damages claims, Plaintiff must be permitted to show how many times Liberty Mutual has obtained similar letters from this same doctor under similar circumstances, and how many time Liberty Mutual terminated benefits prematurely in order to save countless hundreds of thousands of dollars in this State alone.

Request No. 11. With Liberty Mutual's admission that there are no such documents, this request is no longer an issue.

Requests No. 12-15. This should not be difficult for Liberty Mutual to respond to, and it again will produce admissible evidence indicating how often Liberty Mutual has litigated denials based on record reviews by doctors, and the outcomes of such litigation. For example, if it turns out that Liberty Mutual routinely loses such litigation but continues to utilize the process because only a small percentage of denials actually end up being litigated, it would be indicative of bad faith and unfair dealing.

Requests No. 16-17. No longer at issue.

Requests No. 18-19. With Liberty Mutual's admission that it did not seek legal advice before pursuing the conduct at issue, these requests are no longer at issue.

Requests No. 20-23.

11

In <u>Grange Mut. Ins. Co. v. Trude</u>, 151 S.W.3d 803 (Ky 2004) the court addressed discoverability of employee records in a bad faith case:

> We agree that many of the items likely to be found in personnel records (e.g., original job application, marital information, tax and dependant data, medical information, health insurance data, worker's compensations claims, and retirement account data) are irrelevant to a bad faith claim and thus are not discoverable. Thus, Wilder's discovery requests, to the extent that such truly personal items are covered, are overly broad.
>
> Other information to be found in personnel files (e.g., related to job performance, bonuses, wage and salary data, disciplinary matters) is relevant to Wilder's claim. Job performance and disciplinary information could help show that the adjusters and their superiors had engaged in bad faith practices in adjusting Wilder's initial claim or that they had engaged in bad faith practices at other times. This information could also show Grange's knowledge or even approval of such practices. This makes those portions of the personnel records related to job performance and disciplinary matters discoverable.
>
> Wilder claims that the compensation of Grange's employees could be keyed to obtaining low settlements, which in turn might encourage bad faith practices by adjusters and other employees. Wage, salary, and bonus data as to the employees described in the discovery requests shed light on this subject, as would the discovery requests as to how Grange's overall compensation system works. Thus, insofar as the requested personnel records relate to compensation of the employees involved and the other records relate to how Grange's overall compensation

system works, they are discoverable.
Id. 153 S.W.3d at 815.

If it turns out Liberty Mutual employs people who have demonstrated an unwillingness or inability to comply with the obligations of acting in good faith and fairly dealing with Hawaii insured, Liberty Mutual has breached its contractual and statutory and common law obligations to Hawaii insureds such as Tiara Engle. The competence, abilities and motivations of the employees assigned by Liberty Mutual to handle PIP claims is an important component in this case. As to the records relating to bonuses and incentives, Plaintiff has yet to receive said documents.

Request No. 24. No longer at issue.

Request No. 25. This should not be difficult to produce. Liberty Mutual issues annual 1099 forms to the doctors it uses in Hawaii to obtain record review letters to support denials of benefits. This should be an easy expense record to locate, as someone in Liberty Mutual must keep track of their expenses.

Requests No. 26-31. Liberty Mutual must certainly possess such information in a readily available form. This information is very likely used to determine profits from doing business in Hawaii, as well as costs, as well as bonuses to management and claims personnel.

13

Request No. 32. With Liberty Mutual's admission that there are no such documents, this request is no longer at issue.

Request No. 33. This cost of doing business in Hawaii information should be readily available to Liberty Mutual. It is a basic bookkeeping entry, no different than asking a law firm how much it paid out to experts for their services in a given year.

Request No. 34. Liberty Mutual must certainly possess such information in a readily available form. This information is very likely used to determine profits from doing business in Hawaii, as well as costs, as well as bonuses to management and claims personnel.

Request No. 35. This request did not ask for Hawaii alone. If Liberty Mutual advertised or promoted itself in Hawaii as part of a national program, the fact finder should be able to see what the advertisements and promotions said and looked like.

DATED: Honolulu, Hawaii, ___September 22, 2006___.

_____
ROY K. S. CHANG
HARVEY M. DEMETRAKOPOULOS
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TIARA ENGLE and PORTNER ORTHOPEDIC REHABILITATION, INCORPORATED,<br><br>        Plaintiffs,<br><br>    vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATION 1-10; DOE PARTNERSHIPS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10; and ROE GOVERNMENTAL ENTITIES 1-10,<br><br>        Defendants. | CIVIL NO. 04 00256 (SOM) (BK)<br>(Other Civil Action)<br><br>**CERTIFICATE OF SERVICE** |

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at his last known address:

        KENNETH J. MANSFIELD, ESQ.    (hand delivered)
        Five Waterfront Plaza
        4th Floor
        500 Ala Moana Boulevard
        Honolulu, Hawaii   96813

        Attorney for Defendant
        LIBERTY MUTUAL FIRE INSURANCE COMPANY

DATED: Honolulu, Hawaii, September 22, 2006.

_____
ROY K. S. CHANG
HARVEY M. DEMETRAKOPOULOS
Attorneys for Plaintiff