IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TIARA ENGLE and PORTNER ORTHOPEDIC REHABILITATION, INCORPORATED,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATION 1-10; DOE PARTNERSHIPS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10; and ROE GOVERNMENTAL ENTITIES 1-10,<br><br>　　　　Defendants. | CIVIL NO. 04 00256 (SOM) (BK)<br>(Other Civil Action)<br><br>**MEMORANDUM IN SUPPORT OF MOTION**<br><br><br><br><br><br>Trial Week:  September 11, 2007 |

**MEMORANDUM IN SUPPORT OF MOTION**

1.  THE SHORT VERSION

During the hearing on a previous motion to compel, this Court assisted the parties in formulating a discovery plan designed to accommodate the Plaintiff's need for information about Dr. Lau's record review practices.  In light of the hardships asserted by Liberty Mutual in trying to locate records in its files, the Court suggested that Plaintiff obtain information directly from Dr. Lau.

Following the court's suggestion, Plaintiff issued a subpoena to the custodian of records for Dr. Lau, and

issued a subpoena for Dr. Lau to appear at an oral deposition. Dr. Lau has effectively blocked both discovery efforts. A person from Dr. Lau's office appeared for the custodian of records deposition. She testified under oath that she was Dr. Lau's "custodian of records", and that the only document responsive to the subpoena was the one letter he wrote regarding Ms. Engle, and the bill for that letter. In a subsequent deposition that person confessed that she was not the custodian of records, that she did not maintain or control the records review documents kept by Dr. Lau, and that she had made no effort to gather or review records to comply with the subpoena. She admitted that she was a receptionist who was told by her boss to say that she was the custodian of records, and that it was incorrect. She also acknowledged that there were other records review letters that should have been produced, and that the records review documents are kept in Dr. Lau's office in a separate file.

In an even more flagrant flouting of the court's procedures, Dr. Lau flatly refused to comply with the subpoena issued for his oral deposition, unless he was paid $1,000 per hour of deposition, in advance, and the deposition had to be at a time and place of his choosing.

We need the court to exercise its powers in this matter to issue an order to Dr. Lau to properly comply with the discovery procedures in this case.

A fuller, more detailed explanation of the matter follows, with citations and exhibits.

2.  THE LONG VERSION.

This is a bad faith tort action against an insurer, based upon denials of medical coverage to an auto accident victim. When Ms. Engle still suffered from back pain five months after the accident, her treating doctor wanted to have an MRI performed. (The MRI could not be performed earlier because Ms. Engle was pregnant). Rather than pay for the MRI, Liberty Mutual hired Clifford Lau, M.D. to render medical opinions about Ms. Engle by looking at her medical records. Dr. Lau professes to be able to assess an accident victim's condition and treatment needs without needing to see or examine the person, and without the need for diagnostic tests. He claims he can tell what the person's current condition is and what their treatment needs by just looking at their medical records. Dr. Lau provided Liberty Mutual with a letter stating that Ms. Engle did not need treatment or an MRI. Liberty Mutual used the letter as a basis to deny any further medical coverage to Ms. Engle. Her doctors obtained the MRI

3

anyway, and discovered that she had a herniated disc in her back that would have remained undetected without the MRI.

Plaintiff and Liberty Mutual have been engaged in a lengthy effort to obtain discovery in this matter. This court previously heard a motion to compel in this matter, and worked with the parties to create a reasonable plan through which the parties could get the discovery they needed. One of the key categories of discovery was how many records reviews Dr. Lau has done for Liberty Mutual, where he has rendered medical opinions about people without actually examining them. Another key issue has been how much he has been paid by Liberty Mutual.

One of the court's proposals was that Plaintiff should start with getting information from Dr. Lau, rather than have Liberty Mutual search its files for how many records reviews he has done. In complying with this proposal, Plaintiff did two things:

1)   A subpoena duces tecum was issued requiring the custodian of records from Dr. Lau to produce all records reviews and documents relating thereto between 2000 and 2006. (See Exhibit A.)

2)   A subpoena was issued to Clifford Lau, M.D. to appear for an oral deposition. (See Exhibit B.)

Dr. Lau has thwarted both efforts to obtain discovery.

4

With respect to the custodian of records subpoena, a receptionist who has now admitted that she has nothing to do with keeping or maintaining records appeared for the deposition and testified.  She brought one, and only one, record review to produce --- the record review relating to Tiara Engle.  The receptionist has now admitted that she knew nothing about his records, and made no effort to gather or review records to comply with the subpoena.  When presented with two other record reviews that fell within the description of the subpoena, she stated that they should have been produced, and that she did not know why they were not produced. The following citations are from the transcript of the deposition of the receptionist, Rhonalyn Hortizuela:

>     Q.   All right.  Now, what is your position
>     there?
>     A.   Receptionist.
>
>              *         *         *
>
>     What does your job entail?
>     A.   Mainly?  To answer phone.
>     Q.   Okay.
>     A.   Take messages.
>     Q.   Okay.
>     A.   Check-in patients.
>     Q.   All right.
>     A.   Register patients.  That's mainly.
>     That's all I do.
>
>              *         *         *

5

Q. Now, are the records that are sent by insurance companies –
A. Uh-huh.
Q. Let me make it clear.
A. Okay.
Q. Those are records relating to people who are not being seen by Dr. Lau as patients, correct?
A. Right.
Q. They're records that he's going to look at and then –
A. For records review?
Q. -- do a records review?
A. Yes. Yes.
Q. Now, are those records kept in the same file as the patient charts?
A. I don't know exactly where they keep the records, but I know its in the office.

\* \* \*

Q. And the insurance records for records reviews are kept in a separate place?
A. In the office.

\* \* \*

Q. All right. Do you know how the records that are sent Dr. Lau by insurance companies for records reviews –
A. Uh-huh.
Q. --are organized and maintained?
A. No.
Q. Is it your responsibility to organize those records?
A. No.
Q. Is it your responsibility to maintain those records?
A. No.
Q. Has it ever been your responsibility to organize those records?
A. No.
Q. Has it ever been your responsibility to maintain those records?
A. No.

\* \* \*

6

> Q. Okay. Would it be correct to say that other than receiving documents that are sent to Dr. Lau's office for a records review, you have nothing else to do with records review documents or files?
> A. Right.

See Appendix A, transcript, pp. 7-17, as highlighted.

When asked directly if she was the custodian of records, she admitted that she was not:

> Q. You did not review the files and records of Dr. Lau in order to find all of the documents that may be included in the categories listed in the above subpoena?
> A. No.
> Q. You did not verify in any way that the six pages of documents that you were given were all of the records that Dr. Lau had that would be subject to the subpoena?
> A. No.
>
> \*         \*         \*
>
> Q. All right. As part of your job, you don't maintain the records for Dr. Lau, do you?
> A. No.
> Q. Are Dr. Lau's records under your care?
> A. No.
> Q. Are they in your custody?
> A. No.
>
> \*         \*         \*
>
> Q. You feel at ease representing to the Notary Public that you have custody, care and control of the records even though you don't have custody, care and control of the records?
> A. I would say no.
>
> \*         \*         \*

7

>     Q.   Okay.  And, in fact, you know you're
>     not the custodian of records.
>     A.   Right.

See Appendix A, transcript, pp. 37-42, as highlighted.

When confronted with two record review letters that were not produced in response to the subpoena, the receptionist admitted they should have been produced, and did not know why they were not:

>     Q.   Would you agree that if you were
>     supposed to produce all documents indicating
>     correspondence to Liberty Mutual regarding
>     records reviews from Dr. Lau between January
>     1, 2000 and October 10, 2006, that the
>     documents attached here as Exhibit C and D
>     should have been included?
>     A.   Should have been included, yes.
>     Q.   Okay.  And you do not know why they
>     were not included?
>     A.   No, I don't.
>     Q.   You do not know why the person who
>     gathered the documents for the production
>     did not include Exhibits C and D?
>     Q.   No.

See Appendix A, transcript, pp. 45-46, as highlighted.

With respect to the subpoena for his appearance to provide oral testimony, Dr. Lau thumbed his nose at the judicial system even more.  He refused to appear unless he first received $1000.00 per hour of testimony, in advance. Moreover, he refused to appear where the deposition was scheduled to be held in Plaintiff's counsel's office, and instead indicated he would only appear, after payment, at

8

his own office in the evening hours. See Affidavit of Harvey M. Demetrakopoulos, attached hereto.

Plaintiff requests that this court enforce its procedures and rules by issuing an order compelling Dr. Lau to thoroughly comply with the subpoena duces tecum, and to appear for his oral deposition at Plaintiff's counsel's office without requiring any payment other than those mandated by the court rules and/or statutes. Dr. Lau is not entitled to set conditions or prices for his compliance with the law. He is not a litigation expert in this matter, but is a fact witness who was hired to do certain acts, and who is, like any other person, subject to the powers of the court to compel him to appear and provide testimony regarding those acts.

Plaintiff is entitled under the powers and procedures of this court to obtain all of the relevant records from Dr. Lau, and then to depose Dr. Lau about his practices and the actions taken in relation to this bad faith claim. We ask the courts assistance in dealing with Dr. Lau, and request that he be ordered to comply as any other person would.

DATED:  Honolulu, Hawaii, _January 30, 2007_.

_____
ROY K. S. CHANG
HARVEY M. DEMETRAKOPOULOS
Attorneys for Plaintiff

10