# Transcript of the Testimony of
# **RHONALYN HORTIZUELA**

**Date:** January 11, 2007
**Case No.:** 04-00256
**Case:** ENGLE v. LIBERTY MUTUAL FIRE INSURANCE COMPANY

Carnazzo Court Reporting Company, Ltd.
Phone: (808)532-0222
Fax: (808)532-0234
Internet: www.carnazzo.com

APPENDIX A

04-00256                                   ENGLE v. LIBERTY MUTUAL FIRE INSURANCE COMPANY

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

TIARA ENGLE and PORTNER          )  CIVIL NO. 04 00256 (SOM/BK)
ORTHOPEDIC REHABILITATION,       )  (Other Civil Action)
INCORPORATED,                    )
                                 )
                Plaintiffs,      )
                                 )
        vs.                      )
                                 )
LIBERTY MUTUAL FIRE INSURANCE    )
COMPANY; JOHN DOES 1-10, ET AL., )
                                 )
                Defendants.      )
_____)

DEPOSITION OF RHONALYN B. HORTIZUELA

Taken on behalf of the Plaintiffs at the law offices of Shim &
Chang, 333 Queen Street, Suite 900, Honolulu, Hawaii, commencing
at 2:35 p.m. on Thursday, January 11, 2007 pursuant to Notice.

BEFORE:  CYNTHIA A. GARDUQUE, CSR 251
         Notary Public, State of Hawaii


CARNAZZO COURT-REPORTING CO., LTD.

## Page 2

1  APPEARANCES:
2
3  On Behalf of the Plaintiffs:
4  HARVEY M. DEMETRAKOPOULOS, ESQ.
   Shim & Chang
5  333 Queen Street, Suite 900
   Honolulu, Hawaii  96813
6
7
   On Behalf of the Defendant Liberty
8  Mutual Fire Insurance Company:
9  ELIZABETH A. ROBINSON, ESQ.
   McCorriston Miller Mukai MacKinnon LLP
10 Five Waterfront Plaza, 4th Floor
   500 Ala Moana Boulevard
11 Honolulu, Hawaii  96813
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## Page 3

1                    INDEX
2
3  EXAMINATION BY:                    PAGE
4
   MR. DEMETRAKOPOULOS                  4
5
   MS. ROBINSON                       46
6
   MR. DEMETRAKOPOULOS                50
7
8
   EXHIBITS MARKED FOR IDENTIFICATION:
9
10
11 A - Subpoena Duces Tecum Re: The Custodian   18
   of Records for Clifford Lau, M.D., October
12 27, 2006 @ 9:00 a.m.
13 B - Deposition of Rhonalyn Balmori Upon      25
   Written Interrogatories
14
   C - Letter report dated May 14, 2003,        43
15 4 pages
16 D - Letter report dated October 16, 2003,    44
   2 pages
17
18
19
20
21
22
23
24
25

## Page 4

1                RHONALYN B. HORTIZUELA,
2  called as a witness by and behalf of the Plaintiffs, having been
3  first duly sworn, was examined and testified as follows:
4                    EXAMINATION
5  BY MR. DEMETRAKOPOULOS:
6     Q.  Could you please state your name?
7     A.  Rhonalyn B. Hortizuela.
8     Q.  Okay.  And did you recently get married?
9     A.  Yes.
10    Q.  How long ago?
11    A.  It was two weeks ago.
12    Q.  What was your legal name before you got married?
13    A.  Rhonalyn Balmori.
14    Q.  Okay.  Let me explain very briefly that this is a
15 deposition.
16    A.  Okay.
17    Q.  And you've been sworn to give truthful testimony.
18    A.  All right.
19    Q.  The meaning and purpose of you testifying here today is
20 the same as if you were in court.  You've been given an oath to
21 tell the truth, and we will be asking you questions and you need
22 to give us some answers.  Okay?
23    A.  Okay.
24    Q.  Now, basically, what will happen today is I will ask you
25 questions and you give me answers.

RHONALYN HORTIZUELA                                    1-11-2007
        Carnazzo Court Reporting Co, Ltd.

04-00256                                    ENGLE v. LIBERTY MUTUAL FIRE INSURANCE COMPANY

**Page 5**

1    A.  All right.
2    Q.  This attorney can also ask you questions.
3    A.  Okay.
4    Q.  So you can answer her, as well.
5        The court reporter is taking down everything orally,
6    meaning she's listening to us and she's typing it up.  So we need
7    to be verbal in all of our communications.
8    A.  Okay.
9    Q.  Nodding the head or shaking the head by itself will not
10   provide an answer that the court reporter can take down.  Okay?
11   A.  All right.
12   Q.  Then what she is going to do when we're done is type it
13   up into a booklet.
14   A.  All right.
15   Q.  You will get to look at that booklet if you want to --
16   A.  Yes.
17   Q.  -- to review it and make sure if it's correct or not.
18   A.  Okay.
19   Q.  And if there's any corrections you feel are necessary,
20   you get to make them.
21   A.  All right.
22   Q.  However --
23   A.  However?
24   Q.  -- if you make changes, you can be asked about them and
25   we can comment upon the changes and ask as to why they were made.

**Page 6**

1    Because in a sense, it's changing your testimony.
2    A.  Okay.
3    Q.  Okay?  If I ask you a question that you do not
4    understand --
5    A.  Right.
6    Q.  -- please tell me.
7    A.  Okay.
8    Q.  Otherwise, please answer all the questions that you're
9    asked and we will assume that you understood them.  Okay?
10   A.  I'll try.  Okay.
11   Q.  All right.  Now --
12       THE WITNESS:  I'm sorry, I didn't get your name.
13       MS. ROBINSON:  My name's Elizabeth Robinson.
14       THE WITNESS:  Okay.
15       MS. ROBINSON:  I'm an attorney for Liberty Mutual.
16       THE WITNESS:  Okay.
17   Q.  (By Mr. Demetrakopoulos)  Have you been deposed before?
18   A.  No.
19   Q.  Other than when you appeared with the court reporter
20   earlier in this matter?
21   A.  No, I've never.
22   Q.  Okay.
23   A.  This is my first time.
24   Q.  Okay.
25   A.  Yeah.

**Page 7**

1    Q.  All right.  We'll come back to that.
2    A.  Okay.
3    Q.  Okay?
4        Let's see here.  Okay.  Where do you work?
5    A.  I work for Bone & Joint Clinic of Hawaii.
6    Q.  All right.  And where is that located?
7    A.  It's at 1329 Lusitana Street.
8    Q.  Okay.
9    A.  And we're in Suite 501.  Honolulu 96813.
10   Q.  How long have you worked there?
11   A.  About two and a half years.
12   Q.  All right.  Now, what is your position there?
13   A.  Receptionist.
14   Q.  Aside from yourself --
15   A.  Uh-huh.
16   Q.  -- I want to find out who else works there.  And you can
17   go down and list any way you want.
18   A.  Well, each doctor has their own assistant.
19   Q.  How many doctors are there?
20   A.  We have a total of five.
21   Q.  Okay.
22   A.  Four active, one semi-retired.
23   Q.  One semi --
24   A.  -- -retired, yes.
25   Q.  Okay.

**Page 8**

1    A.  And their assistants.  And we have two bookkeeper.
2    Q.  Okay.
3    A.  We also have a pharmacy tech and an X-ray technician.
4    Q.  Pharmacy tech, X-ray tech.
5    A.  Yes.
6    Q.  Now, you mentioned that there are assistants.
7    A.  Yes.
8    Q.  Is there --
9    A.  So each doctor has their own assistant.
10   Q.  Is there one assistant per doctor?
11   A.  We have two doctors with one assistant and two doctors
12   with two of their own assistants.
13   Q.  And what about, I guess, the one who's semi-retired?
14   A.  He only assists in surgeries, so --
15   Q.  All right.  Let's start with the names of the doctors.
16   A.  Okay.
17   Q.  The four active doctors.
18   A.  Okay.
19   Q.  One is Dr. Clifford Lau.
20   A.  Clifford Lau, yes.
21   Q.  Who are the other doctors?
22   A.  We have Dr. Morris Mitsunaga.
23   Q.  Okay.
24   A.  Dr. Kent Davenport.  Dr. Gary Okamura.
25   Q.  And does Dr. Okamura have one or two assistants?

2  (Pages 5 to 8)

RHONALYN HORTIZUELA                          1-11-2007
        Carnazzo Court Reporting Co, Ltd.

Page 9

1  A.  He has two regular assistants.
2  Q.  Okay.
3  A.  But there's another one that would help him.
4  Q.  Okay.
5  A.  Yeah.  I don't know what their schedule is, but we have
6  an extra assistant to help out Dr. Okamura.
7  Q.  Plus.
8  A.  Plus, yeah.  Half, I guess.  Say half.
9  Q.  Dr. Kent Davenport.  How many assistants?
10  A.  Has one.
11  Q.  One assistant?  Okay.
12      Dr. Morris Mitsunaga?
13  A.  Has two regular assistants.
14  Q.  Two assistants.
15  A.  And two other helpers.
16  Q.  And then Dr. Clifford Lau?
17  A.  Has one.
18  Q.  One assistant.  All right.
19      Who is Dr. Lau's assistant?
20  A.  Kelly.
21  Q.  How do you spell her name?
22  A.  K-e-l-l-y.
23  Q.  What's her last name?
24  A.  Kahaialii.
25  Q.  Kahaialii?

Page 10

1  A.  Kahaialii.
2  Q.  So K-a-h-a-i-a-l-i-i?  Kahaialii.
3  A.  Uh-huh.
4  Q.  All right.  And there's two bookkeepers, right?
5  A.  Yes.
6  Q.  What are their names?
7  A.  Janis --
8  Q.  All right.
9  A.  -- and Linda.
10  Q.  And --
11  A.  Linda.
12  Q.  Okay.  Janis is Janis who?
13  A.  She's a bookkeeper.
14  Q.  Janis -- what's her last name?
15  A.  Honda.
16  Q.  All right.  Janis Honda.
17      And what about Linda?
18  A.  Linda Lovewell.
19  Q.  Lovewell?  Okay.
20      And then you said there's a pharmacy tech?
21  A.  Yes.
22  Q.  Who is that?
23  A.  Kim -- I believe her last name is Connor.
24  Q.  Connor?
25  A.  Yes.

Page 11

1  Q.  With all o's?  C-o-n-n-o-r?
2  A.  Yeah.
3  Q.  And an X-ray tech?
4  A.  Ian Onaga.
5  Q.  Ian --
6  A.  Onaga.
7  Q.  Onaga.  Okay.
8      What does your job entail?
9  A.  Mainly?  To answer phone.
10  Q.  Okay.
11  A.  Take messages.
12  Q.  Okay.
13  A.  Check-in patients.
14  Q.  All right.
15  A.  Register patients.
16      That's mainly.  That's all I do.
17  Q.  All right.  What does Kelly Kahaialii do?
18  A.  That's Dr. Clifford Lau's assistant, so she schedules
19  patients for Dr. Lau.
20  Q.  What else does she do?
21  A.  She's Dr. Lau's assistant, so everything Dr. Lau -- yeah.
22  Mainly dealing with the patients, yeah?
23  Q.  Now, do the doctors share assistants?
24  A.  No, they don't.
25  Q.  So Dr. Lau's matters --

Page 12

1  A.  So Dr. Lau's assistant would just be Kelly.
2  Q.  Okay.
3  A.  Strictly Kelly, yeah?
4  Q.  All right.  So the other assistants -- for example, Dr.
5  Mitsunaga's assistants --
6  A.  Yes.
7  Q.  -- would not handle any matters for Dr. Lau?
8  A.  No.
9  Q.  And the same would be for Dr. Davenport?
10  A.  Yes.
11  Q.  And Dr --
12  A.  Okamura.
13  Q.  -- Okamura?
14  A.  Yes.
15  Q.  All right.  Now, where are the records kept for Dr. Lau?
16  A.  Record charts you mean?
17  Q.  Well, let's start with --
18  A.  Patients' charts or -- be specific.
19  Q.  Let's start about what kind of records there are, okay?
20      Now, what type of records do you see in the office?
21  A.  Patients' charts.
22  Q.  What other type of records do you see?
23  A.  Records that are sent by insurance company for
24  evaluation --
25  Q.  Okay.

04-00256                                    ENGLE v. LIBERTY MUTUAL FIRE INSURANCE COMPANY

Page 13

1    A. -- or records review.
2    Q. Now, are the records that are sent by insurance
3  companies --
4    A. Uh-huh.
5    Q. Let me make it clear.
6    A. Okay.
7    Q. Those are records relating to people who are not being
8  seen by Dr. Lau as patients, correct?
9    A. Right.
10    Q. They're records that he's going to look at and then --
11    A. For records review?
12    Q. -- do a records reviews?
13    A. Yes. Yes.
14    Q. Now, are those records kept in the same file as the
15  patient charts?
16    A. I don't know where exactly they keep the records, but I
17  know it's in the office.
18    Q. Are the patient charts --
19    A. I don't know if they have an exact place for the records
20  or a separate place for those records that comes in.
21    Q. So you don't know where or how the insurance company
22  records are kept --
23    A. No.
24    Q. -- by Dr. Lau?
25    A. No. Because whatever insurance -- or records I get from

Page 14

1  the insurance company, I give it directly to Kelly.
2    Q. Where are the patient charts kept?
3    A. We have a chargeback, a cabinet file.
4    Q. Okay.
5    A. Yeah. Each doctor has their own.
6    Q. Do you know if the insurance company records for records
7  review are kept in the same files as the patient charts?
8    A. Not that I know of.
9    Q. They're kept separately?
10    A. Separate, yeah. I believe so.
11    Q. During the time that you have worked there --
12    A. Uh-huh.
13    Q. I think you said two and a half years?
14    A. Yes.
15    Q. So you started somewhere in mid 2004?
16    A. Somewhere in July 2004, yeah.
17    Q. In the time that you've worked there at the Bone & Joint
18  Clinic of Hawaii --
19    A. Uh-huh.
20    Q. -- has there been any changes in how the records are
21  maintained regarding insurance company records versus patient
22  charts?
23    A. No.
24    Q. As far as you know, during the time you've been there,
25  the patient charts have been kept in one file cabinet?

Page 15

1    A. Yes.
2    Q. And the insurance company records for records reviews are
3  kept in a separate place?
4    A. In the office.
5    Q. Yes.
6    A. Yes.
7    Q. But not in the same place as the patient files?
8    A. I don't know if they put it there, see. I don't know
9  because I don't take care of the records. I give it directly to
10  Kelly. So I don't know where she put the records.
11    Q. Okay.
12    A. Yeah.
13    Q. All right. Do you know how the records that are sent to
14  Dr. Lau by insurance companies for records reviews --
15    A. Uh-huh.
16    Q. -- are organized or maintained?
17    A. No.
18    Q. Is it your responsibility to organize those records?
19    A. No.
20    Q. Is it your responsibility to maintain those records?
21    A. No.
22    Q. Has it ever been your responsibility to organize those
23  records?
24    A. No.
25    Q. Has it ever been your responsibility to maintain those

Page 16

1  records?
2    A. No.
3    Q. You mentioned that when the records from insurance
4  companies come in --
5    A. Right.
6    Q. -- with their request for Dr. Lau to do a records review,
7  they come with a letter usually?
8    A. Okay.
9    Q. Well, do they come to your desk?
10    A. Whatever records comes in --
11    Q. Yes.
12    A. I believe it's already scheduled.
13    Q. So the records come in after it's been arranged --
14    A. Right. Then I sign for it if I need to, then I give it
15  to Kelly.
16    Q. Okay.
17    A. Yeah.
18    Q. Now, do you have anything to do with the arranging for a
19  records review between an insurance company and Dr. Lau?
20    A. No.
21    Q. Is your first contact with a records review file when
22  records come in from the insurance company to your desk? Is that
23  right?
24    A. That would be the first, yeah, contact.
25    Q. And then you pass it on to --

RHONALYN HORTIZUELA                                    1-11-2007
        Carnazzo Court Reporting Co, Ltd.

Page 17

1    A. To Kelly.
2    Q. -- Kelly.
3      All right. And then do you have any further involvement
4  with those records? Such as when the records review is
5  completed --
6    A. No.
7    Q. -- do you do anything with it?
8    A. No.
9    Q. Okay. Would it be correct to say that other than
10 receiving documents that are sent to Dr. Lau's office for a
11 records review, you have nothing else to do with records review
12 documents or files?
13   A. Right.
14   Q. All right. Let's see. Do you know what happens to
15 records that are sent to Dr. Lau for a records review by an
16 insurance company after you give them to Kelly?
17   A. No, I don't.
18   Q. Do you know if they are organized in any particular way
19 or given to Dr. Lau in any particular way?
20   A. No, I don't.
21   Q. Have you ever seen Dr. Lau doing a records review?
22   A. No.
23   Q. Does he do them in the office?
24   A. I don't know.
25   Q. Do you know if he does them at home?

Page 18

1    A. No, I don't.
2      MR. DEMETRAKOPOULOS: Let's start with what we'll
3  mark as Exhibit A.
4      (Deposition Exhibit No. A was marked for
5      identification.)
6    Q. (By Mr. Demetrakopoulos) I'm going to show you what's
7  been marked as Exhibit A.
8    A. Okay.
9    Q. And this is a subpoena. It's called a subpoena duces
10 tecum.
11   A. Right.
12   Q. That was to the custodian of records for Clifford Lau,
13 M.D.
14   A. Uh-huh.
15   Q. And according to the fourth page of Exhibit A, it was
16 served on you by Sheriff Mark A. Peacock --
17   A. Yes, I remember him.
18   Q. -- on October 19th, 2006.
19   A. Yes.
20   Q. Do you remember that, or do you just remember him?
21   A. I remember him.
22   Q. Has he come to your office on more than one occasion?
23   A. To serve subpoenas, yeah.
24   Q. Yes. All right.
25     Do you recall receiving this particular subpoena that's

Page 19

1  in front of you as Exhibit A?
2    A. Barely.
3    Q. What I'd like to know is -- and we can approach this one
4  of two ways. You tell me which is easier.
5    A. Okay.
6    Q. What I want to find out is what you did with the subpoena
7  after you got it. And you can tell me if you remember
8  specifically what you did with this subpoena, or you can tell me
9  I don't recall this one specifically, but here's what I always do
10 with subpoenas.
11     Which way is easier for you?
12   A. I don't recall what I did with the subpoena.
13   Q. Okay.
14   A. But what I usually do --
15   Q. Yes.
16   A. -- is sign for the subpoena and give it to the doctor's
17 assistant.
18   Q. In the situation where a subpoena is served upon you for
19 records that Dr. Lau would have, that would indicate you give the
20 subpoena to Kelly --
21   A. Yes, because --
22   Q. -- Kahaialii?
23   A. Yes.
24   Q. And why would that be?
25   A. Because she is Dr. Lau's assistant.

Page 20

1    Q. Now, have you been authorized by Dr. Clifford Lau to
2  accept subpoenas on his behalf for records?
3    A. I would say yes.
4    Q. In other words, this isn't something you did on your own.
5    A. No.
6    Q. It's part of your job.
7    A. Part of my job, yes.
8    Q. Okay. Well, let me ask you just for a second --
9    A. Okay.
10   Q. This Exhibit A, the subpoena. When you get served, like
11 for example, if you got served on October 19th by --
12   A. All right.
13   Q. -- Sheriff Peacock.
14   A. Okay.
15   Q. Would you give it to Kelly that same day?
16   A. Yes.
17   Q. How would you give it to her? Do you walk over and hand
18 it to her or --
19   A. Yes.
20   Q. -- do you have a special place that you leave it for her?
21   A. No, I would walk over and hand it to her.
22   Q. Okay.
23   A. Yeah.
24   Q. What do you tell her when a subpoena like this comes in?
25   A. There's a subpoena for them.

04-00256                                    ENGLE v. LIBERTY MUTUAL FIRE INSURANCE COMPANY

Page 21

1    Q.  Do you read the subpoena?
2    A.  Do I read?
3    Q.  Do you read it?
4    A.  Yes.
5    Q.  Why do you read it?
6    A.  We have to make sure that we have patient's authorization
7    before we can even sign it.  And I don't -- I don't recall
8    signing for this subpoena.
9    Q.  Okay.
10   A.  But Sheriff --
11   Q.  Peacock?
12   A.  -- Peacock had said that he had to just leave it and we
13   didn't even need to sign for it.
14   Q.  Right.  Okay.  And -- yes, because what he does is, as
15   you can see --
16   A.  Yes.
17   Q.  -- on the page 4, he does the return of service
18   indicating that he gave it to you.
19   A.  Yeah, he just -- yeah.  I didn't sign for it.
20   Q.  Now, when you look at the subpoena, you said I look for a
21   patient's --
22   A.  Authorization.
23   Q.  -- consent or --
24   A.  Yes, consent.
25   Q.  All right.  This subpoena had to do with records relating

Page 22

1    to record reviews and not patient records.  Is that right?
2    A.  I believe so.
3    Q.  So in that situation, you're not going to see a patient's
4    consent or authorization, right?
5    A.  Right.  Right.
6    Q.  Other than this one, Exhibit A, have you received other
7    subpoenas relating to records pertaining to record reviews?
8    A.  No.
9    Q.  Or is this the first one you --
10   A.  This would be the first one.
11   Q.  This is the first one you've gotten?
12   A.  Yeah.
13   Q.  All right.  So your practice is to take a subpoena that's
14   served upon you and take it over to Kelly?
15   A.  To doctors' assistants, yes.
16   Q.  Okay.  And I guess, actually, I should clarify.
17       You also get subpoenas for records for other doctors
18   besides Dr. Lau.
19   A.  Yes.  Yes.
20   Q.  So a sheriff with a subpoena for any of the doctors at
21   the Bone & Joint Clinic would come to see you if you're there
22   working?
23   A.  If I'm in the front, yes.
24   Q.  And you would then determine by looking at the
25   subpoena --

Page 23

1    A.  Right.
2    Q.  -- which doctor it is?
3    A.  Which doctor it is.
4    Q.  And then you would hand it to that person's assistant?
5    A.  Yes.
6    Q.  All right.  And then would you leave it up to that
7    person's assistant to comply with the subpoena, or do you
8    follow-up to make sure that it's complied with?
9    A.  No.  What I look for is the patient's authorization.
10   Q.  Okay.
11   A.  If I see that, then I would say everything is okay --
12   Q.  All right.
13   A.  -- to accept, and then that's when I turn it over to the
14   doctor's assistant and they deal with it after.
15   Q.  Okay.
16   A.  They get the charts ready or whatever they need to.
17   Q.  Do you have anything to do with, for example, calendaring
18   the response date?
19   A.  No.
20   Q.  So once you receive a subpoena and you pass it on to the
21   physician's assistant within the office at the Bone & Joint
22   Clinic of Hawaii, then you leave it up to the physician's
23   assistant to deal with it?
24   A.  Yes.
25   Q.  You don't monitor it?

Page 24

1    A.  No, I don't.
2    Q.  You don't go back to the physician's assistant, say, in
3    two weeks and say hey, did you get the records out on that one?
4    A.  No, because when they get it ready, they put it in the
5    front, and then whoever comes and pick it up, then I give them
6    the chart.
7    Q.  So that's what I was going to ask you next.
8        Do you have any involvement with providing records in
9    response to a subpoena?  Do you give them out to anybody?
10   A.  Yes.
11   Q.  How do you do that?
12   A.  When they come in to pick it up.
13   Q.  Okay.
14   A.  I believe doctor's assistant calls whoever wants the
15   chart, the records.
16   Q.  Uh-huh.
17   A.  And they have it ready.  And then they come, and I just
18   do the swear and they pick up the charts.
19   Q.  When you say you do the swear, what do you mean?
20   A.  You know how they come to pick up the charts when it's
21   ready?
22   Q.  Okay.
23   A.  Yeah.  That's what I do.
24   Q.  You mean --
25   A.  They have the charts ready.

RHONALYN HORTIZUELA                                    1-11-2007
        Carnazzo Court Reporting Co, Ltd.

04-00256                                        ENGLE v. LIBERTY MUTUAL FIRE INSURANCE COMPANY

---

Page 25

1    Q. -- when somebody like the court reporter comes to the
2    office --
3    A. Yes.
4    Q. -- and they ask questions?
5    A. Yes.
6    Q. You answer the questions?
7    A. Yes.
8        MR. DEMETRAKOPOULOS: All right. Let's go to what
9    we'll mark as Exhibit B.
10       (Deposition Exhibit No. B was marked for
11       identification.)
12   Q. (By Mr. Demetrakopoulos) Now, what I'm showing you marked
13   as Exhibit B is a copy of the Deposition of Rhonalyn Balmori Upon
14   Written Interrogatories. And according to the cover page, it was
15   taken at the Bone & Joint Clinic of Hawaii on October 27th, 2006
16   pursuant to subpoena.
17       Let me ask you first, do you recall meeting with the
18   Notary Public -- or court reporters, as we call them -- in this
19   matter and answering questions and providing documents?
20   A. No.
21   Q. Okay. What we'll do is, we'll go through this --
22   A. Okay.
23   Q. -- and read through it. I'll ask you some questions.
24   A. Okay.
25   Q. On page 2 of Exhibit B, it states that Rone-a-lynn

---

Page 26

1    (phonetic) -- am I saying it right?
2    A. Yeah, Ron-a-lynn (phonetic).
3    Q. Rhonalyn Balmori, called a witness by and on behalf of
4    the Plaintiffs and being sworn to tell the truth, the whole truth
5    and nothing but the truth, was examined and testified upon
6    written interrogatories as follows. And then it provides the
7    questions and answers.
8    A. Right.
9    Q. Now, if it states here -- if Lorraine Freitas, the Notary
10   Public who issued this --
11   A. Okay.
12   Q. -- transcript states that she met with you at Dr. Lau's
13   office --
14   A. Okay.
15   Q. -- and swore you in and that she asked you questions and
16   you answered them --
17   A. Uh-huh.
18   Q. Do you have any reason to dispute that?
19   A. No.
20   Q. According to the transcript, you were asked to state your
21   name, and on page 2/line 8 you stated your name as Rhonalyn
22   Balmori.
23   A. Okay.
24   Q. Do you see that?
25   A. Yes, I do.

---

Page 27

1    Q. And just as today, I've avoided asking you all the
2    personal questions about where you live and things like that --
3    A. Right.
4    Q. -- because it's not really necessary for our purposes.
5        At the time that you were asked questions on October
6    27th, it was simply enough for the Notary Public to take your
7    address as being in care of your employer.
8    A. Right.
9    Q. Is that right?
10   A. Yes.
11   Q. And at that time on line 19 of page 2, you indicated that
12   your position was receptionist.
13   A. Yes.
14   Q. Now, question 7 states -- well, before I go into that,
15   let me ask you very quickly. Again, you don't recall this
16   particular event on October 27th independently?
17   A. No, I don't.
18   Q. What is your practice in meeting with the Notary Public
19   or court reporter to answer the questions and provide the
20   records? Do you do it at your desk?
21   A. Yes.
22   Q. And how is your desk set up? Is it like a counter?
23   A. Yes.
24   Q. And on one side is a waiting area for patients?
25   A. Yes.

---

Page 28

1    Q. And on the other side is the --
2    A. Would be my desk.
3    Q. The business office --
4    A. Yes.
5    Q. -- and your desk. Is that right?
6    A. Yes.
7    Q. Okay. And how was the examination done? Does the Notary
8    Public stand on the waiting room side of the counter?
9    A. On the counter, yes.
10   Q. Do they put their machine on the counter?
11   A. No. They just write down. They don't have a machine.
12   Q. Okay. They just write the answers?
13   A. Yes.
14   Q. All right. And you're seated at your desk?
15   A. Yes.
16   Q. And they simply talk with you over the counter?
17   A. Yes.
18   Q. Now, I guess in this situation where you're seated at
19   your desk and you're talking over the counter with the Notary
20   Public, is it correct that people sitting in the waiting area
21   could hear what you're saying?
22   A. No.
23   Q. Why not?
24   A. We wouldn't be loud enough for patients to hear.
25   Q. So you keep it --

---

RHONALYN HORTIZUELA                                    1-11-2007
        Carnazzo Court Reporting Co, Ltd.

04-00256                                ENGLE v. LIBERTY MUTUAL FIRE INSURANCE COMPANY

Page 29

1   A.  Yes.
2   Q.  You keep the volume low?
3   A.  Yes.
4   Q.  All right.  Could people on the other side, on your side
5   of the counter, hear what's going on?
6   A.  If someone's sitting beside me, yes.
7   Q.  Where does Kelly sit in proximity to you?
8   A.  Approximately -- 10 feet.  10, 15 feet away from me.
9   Q.  Does she sit further away from you than the attorney --
10  A.  Yes.
11  Q.  -- to your left?
12      About how far?  Like --
13  A.  And there's a wall --
14  Q.  Okay.
15  A.  -- blocking, yeah.
16  Q.  So does she have an office?
17  A.  No, just a desk.
18  Q.  But there's a wall blocking?
19  A.  Yes, blocking.  So I wouldn't see her face.  I would have
20  to go around.
21  Q.  So she's around the corner?
22  A.  Yes.
23  Q.  All right.  How were you first told or introduced to what
24  you would be doing in doing what you call the swearing, the
25  answering the questions?  How were you taught to do that?

Page 30

1   A.  From previous receptionists.
2   Q.  Okay.
3   A.  Because I did my extern there.
4   Q.  Okay.
5   A.  And that's how I learned it.
6   Q.  So you got to observe other --
7   A.  Yes.
8   Q.  -- receptionists who occupied your position previously?
9   A.  Yes.
10  Q.  How they handled these questions and answers?
11  A.  Yes.
12  Q.  All right.  Now -- let's see.  Question 7 -- I mean --
13  actually, let me start with question No. 6 on page 2 of Exhibit
14  B.
15      Question 6 was, quote, "What is your job or position with
16  your employer?"  And your answer was "Receptionist."
17      Do you see that?
18  A.  Yes.
19  Q.  Is that correct?
20  A.  Yes.
21  Q.  Okay.  No. 7 on page 2 of Exhibit B says question, "In
22  that position, do you have under your care, custody and control
23  any and all logs and records, video tapes, audio tapes and/or
24  related reports (hereinafter referred to as 'records'), kept by
25  your employer?"  And your answer was "Reports."

Page 31

1   A.  Yes.
2   Q.  Then question 8 asked you specifically about -- and
3   basically, the reporter or Notary Public would have read to you
4   at that point from the subpoena, the documents being subpoenaed.
5   I'm going to try to -- because it's duplicated several times
6   throughout the --
7   A.  Okay.
8   Q.  -- deposition, I'll try to cut it down a little bit.
9       Okay.  Let's go to question No. 9, which is on page 4 of
10  Exhibit B.
11  A.  Okay.
12  Q.  Do you see that?
13      Let me read it to you.  Question 9 on your deposition
14  from October 27th, 2006 stated as follows:  Question, "Were you
15  served with a subpoena requiring your appearance before the
16  Notary Public for the purposes of answering these questions and
17  requiring you to bring with you: 1.  Any and all reports and/or
18  letters relating to or reflecting records reviews and/or
19  independent medical examinations performed at the request of
20  Liberty Mutual Fire Insurance Company.  The names of the persons
21  who were examined and/or whose records were reviewed may be
22  redacted prior to the production of the documents covered by this
23  subpoena.  This category is for all responsive documented" -- it
24  should have been "documents" -- "dated between January 1, 2000
25  and October 10, 2006."

Page 32

1       Do you see that?
2   A.  Yes.
3   Q.  Okay.  No. 2.  The question continued.  "Any and all
4   records, whether printed, typed or stored on a computer,
5   indicating and/or reflecting all amounts paid by Liberty Mutual
6   Fire Insurance Company for records reviews and/or independent
7   medical examinations.  This category is for all responsive
8   records dated between January 1, 2000 and October 10, 2006."
9       Do you see that?
10  A.  Yes.
11  Q.  And the question continued on No. 3.  "Any and all
12  correspondence to or from Liberty Mutual Fire Insurance Company
13  related to records reviews and/or independent medical
14  examinations.  This category is for all responsive documents
15  dated between January 1, 2000 and October 10, 2006."
16      Do you see that?
17  A.  Yes.
18  Q.  All right.  And your answer to question No. 9 was "Yes."
19  That's on page 5 of Exhibit B.
20      Do you see that?
21  A.  Yes.
22  Q.  All right.  You were then asked on question No. 10, "Do
23  you have all of those logs and records with you?"  And your
24  response was "Yes."
25      Do you see that?

RHONALYN HORTIZUELA                                    1-11-2007
        Carnazzo Court Reporting Co, Ltd.

04-00256                                    ENGLE v. LIBER.. MUTUAL FIRE INSURANCE COMPANY

Page 33

1   A.  Yes.
2   Q.  All right.  Question No. 11 asked you if the records were
3   complete, and your answer was "Yes."
4       Do you see that?
5   A.  Yes.
6   Q.  Question No. 12 asked "Has any portion of those records
7   ever been removed from your care, custody and control prior to
8   this time?"  And your response was "No."
9       Do you see that?
10  A.  Yes.
11  Q.  And jumping down to No. 17 on page 5 of Exhibit B, you
12  were asked the following question.  "Would you please turn over
13  to the Notary Public at this time the originals or complete and
14  legible copies of any and all of your employer's records, video
15  or audio tapes pertaining to the above-mentioned person, which
16  you have brought with you pursuant to the requirements of the
17  subpoena with which you were served."
18      Do you see that?
19  A.  Yes.
20  Q.  All right.  And your answer was "Yes."
21      And finally, on page 6 of Exhibit B, question No. 19, you
22  were asked please describe briefly any -- sorry.  "Please
23  describe briefly but completely so that they may be readily
24  identified, any of your employer's records pertaining to the
25  above-mentioned person which you have not turned over to the

Page 34

1   Notary Public, including both those records which you have
2   brought with you and those records which you have not brought
3   with you."  And your answer was "None."
4       Correct?
5   A.  Yes.
6   Q.  So looking back on page No. 4 of Exhibit B, the subpoena
7   that you were served with had three categories of documents that
8   were listed there.  Do you see that?
9   A.  Yes.
10  Q.  Okay.  And in response to the subpoena and the three
11  categories of documents, you are noted as having provided six
12  pages total which are at the back of this transcript shown as
13  Exhibit B here.
14      The first page appears to be a billing statement.
15  A.  Correct.
16  Q.  Do you see that?  And it's noted as being No. 1 on the
17  bottom right-hand page --
18  A.  Okay.  All right.
19  Q.  -- of the transcript.
20      And then pages 2, 3, 4, 5 and 6 are a single letter to
21  Agnes Lee at the Liberty Mutual Group dated November 18, 2003 --
22  A.  Okay.
23  Q.  -- apparently from Dr. Lau.  Is that right?
24  A.  Yes.
25  Q.  Now, according to the Notary Public, this is all that you

Page 35

1   produced.
2   A.  Yes.
3   Q.  Okay?  All right.  Do you have any reason to dispute that
4   these six pages of documents shown here on Exhibit B as being the
5   documents you produced are not accurate?
6   A.  No.
7   Q.  Do you have any reason to believe that you actually
8   produced more documents, but the Notary Public failed to include
9   them?
10  A.  No.
11  Q.  Who gave you the six pages of documents to produce to the
12  Notary Public in compliance with the subpoena?
13  A.  That would be Kelly.
14  Q.  All right.
15  A.  She gets it ready.
16  Q.  When a subpoena comes in for records, you turn it over to
17  Kelly.
18  A.  Right.
19  Q.  She gets the records ready.
20  A.  Yes.
21  Q.  And then --
22  A.  She hands it back.
23  Q.  -- gives it back to you.
24  A.  Yes, we have a file.  Yes.
25  Q.  And is there some way that you are told when the court

Page 36

1   reporter or Notary Public will be coming in?
2   A.  Somewhat.  But they don't give an exact day when they're
3   going to come.
4   Q.  Okay.
5   A.  When the Notary, yeah.
6   Q.  All right.  Does the Notary Public or court reporter call
7   you to say they're coming over?
8   A.  No.
9   Q.  They just come in?
10  A.  Come in and show up, yes.
11  Q.  So, for example, when the court reporter or Notary Public
12  in this matter, Lorraine Freitas, shown on Exhibit B -- when she
13  came to the office and she would have told you hi, I'm Lorraine,
14  I'm here to get the records for this one --
15  A.  Yes.
16  Q.  She'll show you something.  Does she show you a piece of
17  paper?
18  A.  No.  She would just say pick-up for -- and patient's
19  name.
20  Q.  All right.  And in this case, it was the records
21  pertaining to the subpoena?
22  A.  Yes.
23  Q.  Okay.  And for the transcript that we're talking about
24  here today, the one attached as Exhibit B to your deposition, you
25  did not search through Dr. Lau's records in order to produce

9 (Pages 33 to 36)

04-00256                                                    ENGLE v. LIBERTY MUTUAL FIRE INSURANCE COMPANY

**Page 37**

1   documents in compliance with the subpoena, did you?
2     A.  No.
3     Q.  You did not review the files and records of Dr. Lau in
4   order to find all of the documents that may be included in the
5   categories listed in the subpoena, did you?
6     A.  No.
7     Q.  You did not verify in any way that the six pages of
8   documents that you were given were all of the records that Dr.
9   Lau had that would be subject to the subpoena?
10    A.  No.
11    Q.  Someone else did that?
12    A.  Whoever got it ready.
13    Q.  All right.  And the person who actually got the documents
14  ready that you turned over --
15    A.  In the subpoena.
16    Q.  -- in this transcript in compliance with the subpoena was
17  Kelly?
18    A.  Yes.
19    Q.  All right.  As part of your job, you don't maintain the
20  records for Dr. Lau, do you?
21    A.  No.
22    Q.  Are Dr. Lau's records under your care?
23    A.  No.
24    Q.  Are they in your custody?
25    A.  No.

**Page 38**

1     Q.  Are they under your control?
2     A.  No.
3     Q.  Have you ever told Kelly that you felt uncomfortable in
4   any way answering questions as the custodian of records for Dr.
5   Lau when you don't actually maintain the records?
6     A.  No.
7     Q.  Have you felt uncomfortable in any way in doing so?
8     A.  No.
9     Q.  You feel at ease representing to the Notary Public that
10  you have custody, care and control of the records even though you
11  don't have custody, care and control of the records?
12    A.  I would say no.
13    Q.  And you understand that you're sworn to tell the truth --
14    A.  Yes.
15    Q.  -- when that person comes to your office, right?
16    A.  Yes.
17    Q.  Aside from Kelly, is there anyone else who gathers
18  records to comply with subpoenas for Dr. Lau's records?
19    A.  No.
20    Q.  It's only her?
21    A.  Yes.
22    Q.  Do you know if Dr. Lau takes any part in gathering the
23  records in order to comply with the subpoenas?
24    A.  No, I don't.
25    Q.  You don't know if he does?

**Page 39**

1     A.  I don't know.
2     Q.  Do you know if he reviews documents that are gathered to
3   comply with the subpoena before they are produced?
4     A.  I don't know.
5     Q.  All you know is that when a subpoena comes in as labeled
6   in Exhibit A for the custodian of records for Dr. Lau --
7     A.  Right.
8     Q.  -- you give that to the person who you consider to be the
9   custodian of records, who is Kelly?
10    A.  Yes.
11    Q.  And she is the one who gathers the records --
12    A.  Yes.
13    Q.  -- and then assembles them and contacts the Notary Public
14  or court reporter to tell them that the records are available?
15    A.  Yes.  And I assume that it's all ready.
16    Q.  Okay.  But you are not the custodian of records --
17    A.  No.
18    Q.  -- for Dr. Lau, right?
19    A.  No.
20    Q.  In this particular instance, the first page identified as
21  documents being produced is a billing statement.  That's the one
22  that's --
23    A.  From what I see, yes.
24    Q.  -- labeled as page 1.
25        And just for the record, it's Exhibit B.  It's actually

**Page 40**

1   the ninth page of Exhibit B.
2     A.  Okay.
3     Q.  But it's actually labeled page 1 at the bottom.
4         Do you know if in gathering records to comply with the
5   subpoena, that whether Kelly obtains a statement like this
6   herself or does she go to the bookkeeper or is it part of a file
7   somewhere?
8     A.  I don't know.
9     Q.  Let me ask you this way.  Do you know where the record
10  I've just identified to you --
11    A.  It would be in the system.
12    Q.  Okay.
13    A.  And she would have to print it out.
14    Q.  And "she" being --
15    A.  Kelly.
16    Q.  Okay.
17    A.  I would assume Kelly.  Because she got the records ready.
18    Q.  And Kelly would be the one who would print out --
19    A.  Print out.
20    Q.  -- a billing statement?
21    A.  Yes.
22    Q.  To include it --
23    A.  Yes.
24    Q.  -- with documents being produced?
25    A.  I would assume so, yes.

10 (Pages 37 to 40)

04-00256                                    ENGLE v. LIBERTY MUTUAL FIRE INSURANCE COMPANY

Page 41

1    Q.  When the court reporter or Notary Public read to you the
2  question that day, October 27th, 2006 and she identified the
3  categories that I went over with you in question No. 9 --
4    A.  Which I don't recall her going over with me.
5    Q.  You don't remember it now, right?  You don't have an
6  independent recollection?
7    A.  No, I don't remember -- I can recall the question No. 9,
8  but not what follows.
9    Q.  Okay.  You don't remember --
10   A.  I don't remember her --
11   Q.  It asked for various documents during almost a six-month
12  period -- I'm sorry, six-year period.  Looking at Exhibit B, page
13  4, question 9, each of the three categories states "This category
14  is for all responsive documents dated between January 1, 2000 and
15  October 10, 2006."
16     Do you see that?
17   A.  Yes.
18   Q.  Okay.  The problem that we have and the reason why I had
19  to talk to you today is we know that what you testified to in
20  Exhibit B is not correct, and I wanted to find out if it was you
21  who made the error or whether it was someone else.
22   A.  I would say me.
23   Q.  How would it be you?
24   A.  Because I testify.  I answer all these questions.
25   Q.  Okay.  And, in fact, you know you're not the custodian of

Page 42

1  records.
2    A.  Right.
3    Q.  And you're not able to say that -- you cannot take an
4  oath and say here are all of the documents maintained by Dr. Lau
5  that are responsive to this subpoena, because you don't know
6  that.
7    A.  I assume everything is ready when they pick it up.
8    Q.  But in this case, Exhibit B, you made no -- let me go
9  this way because I want to be fair.
10   A.  Okay.
11   Q.  It was not your job to ensure that all the documents and
12  records in Dr. Lau's files that were covered by the subpoena were
13  being produced.  Isn't that correct?
14   A.  Correct.
15   Q.  Your job was as receptionist to receive the subpoena --
16   A.  Correct.
17   Q.  -- and to pass it on to Kelly.
18   A.  Yes.
19   Q.  And then you were told as part of your job you are to
20  answer questions --
21   A.  Yes.
22   Q.  -- when a Notary Public or court reporter comes in.
23   A.  Yes.
24   Q.  Even though you're not the custodian of records.
25   A.  Right.

Page 43

1    Q.  Right?
2    A.  Right.
3        MR. DEMETRAKOPOULOS:  Okay.  Let's take a real
4  short break, and we're almost done.  Okay?
5        THE WITNESS:  Okay.
6        (Recess was taken at 3:18 p.m. to 3:20 p.m.)
7    Q.  (By Mr. Demetrakopoulos) Ready?
8    A.  Okay.
9    Q.  All right.  You did not decide on your own to provide
10  testimony as the custodian of records for Dr. Lau even though you
11  knew you were not that party, right?
12   A.  Right.
13   Q.  That was something you were told that's part of your job?
14   A.  I was -- yeah.  I'm assuming it's part of my job.
15   Q.  And you know that you're not the custodian of records,
16  right?
17   A.  Now I know, yes.
18       MR. DEMETRAKOPOULOS I'm going to show you what
19  we'll mark as Exhibit C.
20       (Deposition Exhibit No. C was marked for
21       identification.)
22   Q.  (By Mr. Demetrakopoulos) Let me ask you if -- do you
23  recognize the letterhead at the top of the first page of Exhibit
24  C?  Is that the letterhead of Dr. Lau?
25   A.  Yes.

Page 44

1    Q.  And if you look at the last page of Exhibit C -- it's
2  right over here.
3    A.  Oh, sorry.
4    Q.  Let me take this away.
5    A.  The last page?
6    Q.  Yeah.  If you look at the last page of Exhibit C, does
7  that look to you to be Dr. Lau's signature?
8    A.  No.
9    Q.  It does not?
10   A.  No.
11   Q.  Do you know whose signature that is?
12   A.  No.
13   Q.  Do you in the office use a stamp when Dr. Lau does
14  correspondence?
15   A.  Not that I know of.
16   Q.  Okay.  This Exhibit C is -- we have information to
17  believe is a letter from Dr. Lau to Liberty Mutual Insurance
18  Company dated May 14, 2003.
19     Do you know why this document was not included in the
20  documents that you produced on October 27th, 2006?
21   A.  No, I don't.
22   Q.  All right.  Let me show you what's been marked as -- or
23  what will be marked as Exhibit D.
24   A.  Okay.
25       (Deposition Exhibit No. D was marked for

RHONALYN HORTIZUELA                          1-11-2007
        Carnazzo Court Reporting Co, Ltd.

Page 45

1          identification.)
2     Q.  (By Mr. Demetrakopoulos) Let's start again with do you
3  recognize the letterhead on the top of page 1 of Exhibit D as
4  being Dr. Lau's letterhead?
5     A.  Yes.
6     Q.  And do you recognize the signature on the second page of
7  Exhibit D as being Dr. Lau's signature?
8     A.  I don't know.
9     Q.  Okay.  And again, we have reason to believe that Exhibit
10 D is a letter to Liberty Mutual Insurance Company --
11    A.  Right.
12    Q.  -- labeled here Liberty Mutual Group, dated October 16,
13 2003.
14         Do you know why this document was not included in the
15 documents that were produced by you on October 27, 2006?
16    A.  No.
17    Q.  Would you agree that if you were supposed to produce all
18 documents indicating correspondence to Liberty Mutual regarding
19 records reviews from Dr. Lau between January 1, 2000 and October
20 10, 2006, that the documents attached here as Exhibit C and D
21 should have been included?
22    A.  Should have been included, yes.
23    Q.  Okay.  And you do not know why they were not included?
24    A.  No, I don't.
25    Q.  You do not know why the person who gathered the documents

Page 46

1  for the production did not include Exhibits C and D?
2     A.  No.
3     Q.  Did anyone tell you that documents that were included
4  within the description of the subpoena you had accepted were not
5  going to be produced?
6     A.  No.
7          MR. DEMETRAKOPOULOS: Okay.  That's all I have for
8  you.  She may have some questions.
9          THE WITNESS: Okay
10             EXAMINATION
11 BY MS. ROBINSON:
12    Q.  Hi, Rhonalyn.
13    A.  Hi.
14    Q.  As I said earlier, my name's Elizabeth Robinson.  I'll
15 just ask a few follow-up questions.
16    A.  Okay.
17    Q.  With regard to the records that you keep in the office,
18 are you familiar with how long records are kept?
19    A.  No.
20    Q.  You don't have anything to do with removing records that
21 are old?
22    A.  No.
23    Q.  Okay.  And you don't know if there is such a policy at
24 the office --
25    A.  No.

Page 47

1     Q.  -- with regards to the length of records kept?
2     A.  Records, no.
3     Q.  Okay.
4     A.  All I know is when it's done, a records reviews is done,
5  that they call the insurance company, they ask them if they still
6  want the records back or if they want it to be shredded.  That's
7  all I know.
8     Q.  That's on records reviews only?
9     A.  Independent medical evaluations.
10    Q.  Okay.
11    A.  Yes.
12    Q.  So the office will call the --
13    A.  The doctor's assistant will call the insurance company,
14 whoever sent the records.
15    Q.  And so the insurance company will tell the assistant --
16    A.  Yes.
17    Q.  -- whether or not to send the records back?
18    A.  Or --
19    Q.  Or to shred it?
20    A.  Or -- yes.
21    Q.  And how long after the record review does that happen?
22    A.  I don't know.
23    Q.  If they're sent back, who sends them back?  Do you do
24 that?
25    A.  No.  Somebody from the insurance company would come and

Page 48

1  pick up the records.
2     Q.  Okay.  And if they are shredded, how does that happen?
3     A.  We have our Shred-It --
4     Q.  Someone --
5     A.  -- place.
6     Q.  Someone would gather them up?
7     A.  Yeah, and shred it.
8     Q.  Would that be the assistant?
9     A.  That would be -- yes.  Doctor's assistant.
10    Q.  And what records are shredded?  Are they the ones that --
11    A.  Whatever --
12    Q.  -- come from the --
13    A.  The insurance company, yes.
14    Q.  Okay.  And then -- is there anything else on that that
15 you can add?
16    A.  No.
17    Q.  Okay.  I'm going to switch to these Exhibits C and D.
18    A.  Okay.
19    Q.  It looks like the patient's name or the subject person,
20 her name is blacked out, so you can't tell who it is.
21    A.  Right.
22    Q.  So we don't know if these were related to Ms. Engle or
23 not?
24    A.  No.
25    Q.  If they were related to someone else, would you have --

RHONALYN HORTIZUELA                                        1-11-2007
        Carnazzo Court Reporting Co, Ltd.

Page 49

1    do you know if Kelly would have gathered them and included them
2    in response to the subpoena?
3        A.  No.
4        Q.  You had said earlier you normally check for a consent
5    before you --
6        A.  That's for the charts.
7        Q.  The charts?
8        A.  Yes.
9        Q.  But not for the record reviews?
10       A.  Not for the record reviews, no.
11       Q.  Okay.
12       A.  Because we wouldn't have a patient listing.
13       Q.  And so with the records reviews, you don't have a
14   consent, but you're able to provide the records anyway?
15       A.  I assume, yes.
16       Q.  But if you don't have a consent, you know that you're not
17   supposed to provide them to anybody else?
18       A.  Right.
19       Q.  There is privacy issues.
20       A.  Yes.
21       Q.  You know about those?
22       A.  Yes.
23       Q.  Do you know whether the reports on the record reviews --
24   you had said earlier you're not sure where exactly they're filed.
25           Do you know if they're filed by insurance company, if

Page 50

1    they're set up that way?
2        A.  No, I don't.
3        Q.  So you don't know if they're set up by the patient name
4    or the insurance company's name?
5        A.  No, I don't.
6            MS. ROBINSON: I'd like to take a quick break and
7    just see if there's anything else.
8            MR. DEMETRAKOPOULOS: Okay.
9            MS. ROBINSON: Okay?
10           (Recess was taken at 3:34 p.m. to 3:35 p.m.)
11           MS. ROBINSON: I don't think I have anything else.
12           MR. DEMETRAKOPOULOS: Just one or two follow-up
13   questions.
14           THE WITNESS: Okay.
15           EXAMINATION
16   BY MR. DEMETRAKOPOULOS:
17       Q.  Do you have any idea how many record review files there
18   are that are in Dr. Lau's office?
19       A.  No.
20       Q.  Is it like one cabinet or one drawerful or one box?
21       A.  No, I don't --
22       Q.  You don't know?
23       A.  Don't know.
24       Q.  You have nothing to do with them at all, right?
25       A.  Right.  No.

Page 51

1        Q.  So as the receptionist, you are not able to tell us even
2    whether the amount of records review documents in Dr. Lau's
3    office would fill a banker's box or a file cabinet?
4        A.  No.
5        Q.  You cannot --
6        A.  I can't tell.
7        Q.  Okay.  You have nothing to do with them at all?
8        A.  No.
9        Q.  And it's wrong to say that you are the custodian of
10   records of those documents, right?
11       A.  Right.
12       Q.  And just reminding you again about question No. 9 on
13   Exhibit B, which asks for all correspondence to or from Liberty
14   Mutual relating to record reviews between January 1, 2000 and
15   October 10, 2006, you would agree that Exhibits C and D appear to
16   be correspondence to Liberty Mutual in May and October 2003,
17   right?
18       A.  It should have been included.
19       Q.  It should have been included in the production, right?
20       A.  It should -- yeah, if it's for that patient.
21       Q.  Well, the subpoena doesn't limit it to a patient.  The
22   subpoena is any and all correspondence to --
23       A.  Okay.
24       Q.  -- or from Liberty Mutual Fire Insurance Company relating
25   to record reviews and/or independent medical examinations.  And

Page 52

1    it states this category's for all responsive documents dated
2    between January 1, 2000 and October 10, 2006.
3            So it's not being limited to any one patient.  It's
4    limited to a time period.
5        A.  Okay.
6        Q.  All record reviews between January 1, 2000 and October
7    10, 2006.  That's shown on page 4 and 5 of Exhibit B.
8            With that definition, that category being described in
9    the subpoena, would you agree that Exhibits C and D should have
10   been included?
11       A.  Should have been included.
12           MR. DEMETRAKOPOULOS: All right.  I have nothing
13   further.
14           THE WITNESS: Okay.
15           MS. ROBINSON: I have nothing further, but I
16   reserve that we can reopen if necessary.
17           MR. DEMETRAKOPOULOS: That's fair.
18           MS. ROBINSON: Okay.
19           MR. DEMETRAKOPOULOS: Okay?
20           THE WITNESS: Okay.
21           MR. DEMETRAKOPOULOS: We are done.
22           You have the right to read through this --
23           THE WITNESS: Yes.
24           MR. DEMETRAKOPOULOS: -- if you want to, and sign
25   it if you want to.  So would you like the court reporter to

04-00256                                    ENGLE v. LIBERTY MUTUAL FIRE INSURANCE COMPANY

Page 53

```
 1   contact you when it's available --
 2          THE WITNESS: Yes.
 3          MR. DEMETRAKOPOULOS: -- so that you can do so?
 4          THE WITNESS: Please. Yes.
 5          MR. DEMETRAKOPOULOS: Okay.
 6          (Deposition concluded at 3:38 p.m.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 55

```
 1   STATE OF HAWAII          )
     CITY AND COUNTY OF HONOLULU)
 2
         I, Cynthia A. Garduque, C.S.R., a Notary Public in
 3
     and for the State of Hawaii, do hereby certify:
 4
     That on Thursday, January 11, 2007, at 2:35 p.m., appeared
 5
     before me, RHONALYN B. HORTIZUELA, the witness whose testimony is
 6
     contained herein, that prior to being examined, the witness
 7
     was by me duly sworn or affirmed; that the proceedings were
 8
     taken in computerized shorthand by me and were thereafter
 9
     reduced to print under my supervision; that the foregoing
10
     represents, to the best of my ability, a correct transcript
11
     of the proceedings had in the foregoing matter;
12
         That, if applicable, the witness was notified through
13
     counsel, by mail or by telephone to appear and sign; that if
14
     the transcription is not signed, either the reading and
15
     signing were waived by the witness and all parties, or the
16
     witness has failed to appear and the original has been sealed
17
     unsigned; That pursuant to HRCP 30(f)(1), the original will
18
     be forwarded to noticing counsel for retention.
19
         I further certify that I am not counsel for any of the
20
     parties hereto, nor in any way interested in the outcome of
21
     the cause named in the caption.
22
     Dated: _____
23
24   _____
     CYNTHIA A. GARDUQUE, C.S.R. 251
25   Notary Public, State of Hawaii
     My commission expires: 6/20/09
```

Page 54

```
 1          I, RHONALYN B. HORTIZUELA,
 2   do hereby certify that I have read the foregoing typewritten
 3   pages 1 through 53 inclusive, and corrections, if any, were noted
 4   by me; and that same is now a true and correct transcript of my
 5   testimony noted by me.
 6
 7          Dated _____
 8
 9          _____
10          RHONALYN B. HORTIZUELA
11
12
13   Signed before me this _____
14   day of _____, 2007.
15
16
17   _____
18   My commission expires:
19
20
21
22
23
24
25
```

RHONALYN HORTIZUELA                                    1-11-2007
         Carnazzo Court Reporting Co, Ltd.

| A | | | | |
|---|---|---|---|---|
| **ability** 55:10 | **appeared** 6:19 55:4 | **a.m** 3:12 | **bring** 31:17 | **CITY** 55:1 |
| **able** 42:3 49:14 51:1 | **appears** 34:14 | **B** | **brought** 33:16 34:2 34:2 | **Civil** 1:3,3 |
| **above-mentioned** 33:15,25 | **applicable** 55:12 | **B** 1:11 3:13 4:1,7 25:9,10,13,25 | **business** 28:3 | **clarify** 22:16 |
| **accept** 20:2 23:13 | **approach** 19:3 | 30:14,21 31:10 | **C** | **clear** 13:5 |
| **accepted** 46:4 | **Approximately** 29:8 | 32:19 33:11,21 | **C** 3:14 43:19,20,24 44:1,6,16 45:20 | **Clifford** 3:11 8:19 8:20 9:16 11:18 18:12 20:1 |
| **accurate** 35:5 | **area** 27:24 28:20 | 34:6,13 35:4 | 46:1 48:17 51:15 52:9 | **Clinic** 7:5 14:18 22:21 23:22 25:15 |
| **Action** 1:3 | **arranged** 16:13 | 36:12,24 39:25 | **cabinet** 14:3,25 50:20 51:3 | **come** 7:1 16:4,7,9 16:13,22 18:22 22:21 24:12,17,20 36:3,9,10 47:25 48:12 |
| **active** 7:22 8:17 | **arranging** 16:18 | 40:1 41:12,20 | **calendaring** 23:17 | **comes** 13:20 16:10 20:24 24:5 25:1 35:16 38:15 39:5 42:22 |
| **add** 48:15 | **Aside** 7:14 38:17 | 42:8 51:13 52:7 | **call** 25:18 29:24 36:6 47:5,12,13 | |
| **address** 27:7 | **asked** 5:24 6:9 26:15,20 27:5 31:2 32:22 33:2,6 33:12,22 41:11 | 54:1,10 55:5 | **called** 4:2 18:9 26:3 | |
| **affirmed** 55:7 | | **back** 7:1 24:2 34:6 34:12 35:22,23 47:6,17,23,23 | **calls** 24:14 | **coming** 36:1,7 |
| **Agnes** 34:21 | **asking** 4:21 27:1 | **Balmori** 3:13 4:13 25:13 26:3,22 | **caption** 55:21 | **commencing** 1:13 |
| **ago** 4:10,11 | **asks** 51:13 | **banker's** 51:3 | **care** 15:9 27:7 30:22 33:7 37:22 38:10,11 | **comment** 5:25 |
| **agree** 45:17 51:15 52:9 | **assembles** 39:13 | **Barely** 19:2 | | **commission** 54:18 55:25 |
| **AL** 1:7 | **assistant** 7:18 8:9 8:10,11 9:6,11,18 9:19 11:18,21 12:1 19:17,25 23:4,7,14,21,23 24:2,14 47:13,15 48:8,9 | **basically** 4:24 31:3 | **CARNAZZO** 1:24 | **communications** 5:7 |
| **Ala** 2:10 | | **behalf** 1:12 2:3,7 4:2 20:2 26:3 | **case** 36:20 42:8 | **companies** 13:3 15:14 16:4 |
| **amount** 51:2 | | **believe** 10:23 14:10 16:12 22:2 24:14 35:7 44:17 45:9 | **categories** 34:7,11 37:5 41:3,13 | **company** 1:7 2:8 12:23 13:21 14:1 14:6,21 15:2 16:19,22 17:16 31:20 32:6,12 44:18 45:10 47:5 47:13,15,25 48:13 49:25 51:24 |
| **amounts** 32:5 | | **best** 55:10 | **category** 31:23 32:7,14 41:13 52:8 | |
| **and/or** 30:23 31:17 31:18,21 32:5,6 32:13 51:25 | **assistants** 8:1,6,12 8:25 9:1,9,13,14 11:23 12:4,5 22:15 | **billing** 34:14 39:21 40:20 | **category's** 52:1 | |
| **answer** 5:4,10 6:8 11:9 25:6 27:19 30:16,25 32:18 33:3,20 34:3 41:24 42:20 | **assists** 8:14 | **bit** 31:8 | **cause** 55:21 | **company's** 50:4 |
| | **assume** 6:9 39:15 40:17,25 42:7 49:15 | **blacked** 48:20 | **certify** 54:2 55:3,19 | **complete** 33:3,13 |
| | **assuming** 43:14 | **blocking** 29:15,18 29:19 | **Chang** 1:13 2:4 | **completed** 17:5 |
| **answered** 26:16 | **attached** 36:24 45:20 | **Bone** 7:5 14:17 22:21 23:21 25:15 | **changes** 5:24,25 14:20 | **completely** 33:23 |
| **answering** 25:19 29:25 31:16 38:4 | **attorney** 5:2 6:15 29:9 | **bookkeeper** 8:1 10:13 40:6 | **changing** 6:1 | **compliance** 35:12 37:1,16 |
| **answers** 4:22,25 26:7 28:12 30:10 | **audio** 30:23 33:15 | **bookkeepers** 10:4 | **chargeback** 14:3 | **complied** 23:8 |
| **anybody** 24:9 49:17 | **authorization** 21:6 21:22 22:4 23:9 | **booklet** 5:13,15 | **chart** 24:6,15 | **comply** 23:7 38:18 38:23 39:3 40:4 |
| **anyway** 49:14 | **authorized** 20:1 | **bottom** 34:17 40:3 | **charts** 12:16,18,21 13:15,18 14:2,7 14:22,25 23:16 24:18,20,25 49:6 49:7 | |
| **apparently** 34:23 | **available** 39:14 53:1 | **Boulevard** 2:10 | **check** 49:4 | |
| **appear** 51:15 55:13 55:16 | **avoided** 27:1 | **box** 50:20 51:3 | **Check-in** 11:13 | |
| **appearance** 31:15 | | **break** 43:4 50:6 | | |
| **APPEARANCES** 2:1 | | **briefly** 4:14 33:22 33:23 | | |

04-00256
Page 57

ENGLE v. LIBERTY MUTUAL FIRE INSURANCE COMPANY

computer 32:4
computerized 55:8
concluded 53:6
Connor 10:23,24
consent 21:23,24
  22:4 49:4,14,16
consider 39:8
contact 16:21,24
  53:1
contacts 39:13
contained 55:6
continued 32:3,11
control 30:22 33:7
  38:1,10,11
copies 33:14
copy 25:13
corner 29:21
correct 5:17 13:8
  17:9 28:20 30:19
  34:4,15 41:20
  42:13,14,16 54:4
  55:10
corrections 5:19
  54:3
correspondence
  32:12 44:14 45:18
  51:13,16,22
counsel 55:13,18
  55:19
counter 27:22 28:8
  28:9,10,16,19
  29:5
COUNTY 55:1
court 1:1 4:20 5:5
  5:10 6:19 25:1,18
  27:19 35:25 36:6
  36:11 39:14 41:1
  42:22 52:25
COURT-REPO...
  1:24
cover 25:14
covered 31:22
  42:12
CSR 1:18

custodian 3:11
  18:12 38:4 39:6,9
  39:16 41:25 42:24
  43:10,15 51:9
custody 30:22 33:7
  37:24 38:10,11
cut 31:8
Cynthia 1:18 55:2
  55:24
C-o-n-n-o-r 11:1
C.S.R 55:2,24

## D

D 3:16 44:23,25
  45:3,7,10,20 46:1
  48:17 51:15 52:9
date 23:18
dated 3:14,16
  31:24 32:8,15
  34:21 41:14 44:18
  45:12 52:1 54:7
  55:22
Davenport 8:24 9:9
  12:9
day 20:15 36:2 41:2
  54:14
deal 23:14,23
dealing 11:22
decide 43:9
Defendant 2:7
Defendants 1:8
definition 52:8
Demetrakopoulos
  2:4 3:4,6 4:5 6:17
  18:2,6 25:8,12
  43:3,7,18,22 45:2
  46:7 50:8,12,16
  52:12,17,19,21,24
  53:3,5
deposed 6:17
deposition 1:11
  3:13 4:15 18:4
  25:10,13 31:8,13
  36:24 43:20 44:25

53:6
describe 33:22,23
described 52:8
description 46:4
desk 16:9,22 27:20
  27:22 28:2,5,14
  28:19 29:17
determine 22:24
directly 14:1 15:9
dispute 26:18 35:3
DISTRICT 1:1,2
doctor 7:18 8:9,10
  14:5 23:2,3
doctors 7:19 8:11
  8:11,15,17,21
  11:23 22:15,17,20
doctor's 19:16
  23:14 24:14 47:13
  48:9
document 44:19
  45:14
documented 31:23
documents 17:10
  17:12 25:19 31:4
  31:22,24 32:14
  34:7,11 35:4,5,8
  35:11 37:1,4,8,13
  39:2,21 40:24
  41:11,14 42:4,11
  44:20 45:15,18,20
  45:25 46:3 51:2
  51:10 52:1
doing 17:21 29:24
  29:24 38:7
Dr 8:19,22,24,24
  8:25 9:6,9,12,16
  9:19 11:18,19,21
  11:21,25 12:1,4,7
  12:9,11,15 13:8
  13:24 15:14 16:6
  16:19 17:10,15,19
  17:21 19:19,25
  20:1 22:18 26:12
  34:23 36:25 37:3

37:8,20,22 38:4
  38:18,22 39:6,18
  42:4,12 43:10,24
  44:7,13,17 45:4,7
  45:19 50:18 51:2
drawerful 50:20
duces 3:11 18:9
duly 4:3 55:7
duplicated 31:5

## E

earlier 6:20 46:14
  49:4,24
ease 38:9
easier 19:4,11
either 55:14
Elizabeth 2:9 6:13
  46:14
employer 27:7
  30:16,25
employer's 33:14
  33:24
Engle 1:3 48:22
ensure 42:11
entail 11:8
error 41:21
ESQ 2:4,9
ET 1:7
evaluation 12:24
evaluations 47:9
event 27:16
exact 13:19 36:2
exactly 13:16 49:24
examination 3:3
  4:4 28:7 46:10
  50:15
examinations
  31:19 32:7,14
  51:25
examined 4:3 26:5
  31:21 55:6
example 12:4 20:11
  23:17 36:11
Exhibit 18:3,4,7,15

19:1 20:10 22:6
  25:9,10,13,25
  30:13,21 31:10
  32:19 33:11,21
  34:6,13 35:4
  36:12,24 39:6,25
  40:1 41:12,20
  42:8 43:19,20,23
  44:1,6,16,23,25
  45:3,7,9,20 51:13
  52:7
Exhibits 3:9 46:1
  48:17 51:15 52:9
expires 54:18 55:25
explain 4:14
extern 30:3
extra 9:6

## F

face 29:19
fact 41:25
failed 35:8 55:16
fair 42:9 52:17
familiar 46:18
far 14:24 29:12
feel 5:19 38:9
feet 29:8,8
felt 38:3,7
file 13:14 14:3,25
  16:21 35:24 40:6
  51:3
filed 49:24,25
files 14:7 15:7
  17:12 37:3 42:12
  50:17
fill 51:3
finally 33:21
find 7:16 19:6 37:4
  41:20
Fire 1:7 2:8 31:20
  32:6,12 51:24
first 4:3 6:23 16:21
  16:24 22:9,10,11
  25:17 29:23 34:14

39:20 43:23
**five** 2:10 7:20
**Floor** 2:10
**following** 33:12
**follows** 4:3 26:6
  31:14 41:8
**follow-up** 23:8
  46:15 50:12
**foregoing** 54:2 55:9
  55:11
**forwarded** 55:18
**four** 7:22 8:17
**fourth** 18:15
**Freitas** 26:9 36:12
**front** 19:1 22:23
  24:5
**further** 17:3 29:9
  52:13,15 55:19

**G**

**Garduque** 1:18
  55:2,24
**Gary** 8:24
**gather** 48:6
**gathered** 39:2
  45:25 49:1
**gathering** 38:22
  40:4
**gathers** 38:17
  39:11
**give** 4:17,22,25
  14:1 15:9 16:14
  17:16 19:16,19
  20:15,17 24:5,9
  36:2 39:8
**given** 4:20 17:19
  37:8
**gives** 35:23
**go** 7:17 24:2 25:8
  25:21 27:14 29:20
  31:9 40:6 42:8
**going** 5:12 13:10
  18:6 22:3 24:7
  29:5 31:5 36:3

41:4 43:18 46:5
  48:17
**gotten** 22:11
**Group** 34:21 45:12
**guess** 8:13 9:8
  22:16 28:18

**H**

**half** 7:11 9:8,8
  14:13
**hand** 20:17,21 23:4
**handle** 12:7
**handled** 30:10
**hands** 35:22
**happen** 4:24 47:21
  48:2
**happens** 17:14
**HARVEY** 2:4
**Hawaii** 1:2,13,18
  2:5,11 7:5 14:18
  23:22 25:15 55:1
  55:3,24
**head** 5:9,9
**hear** 28:21,24 29:5
**help** 9:3,6
**helpers** 9:15
**herby** 55:3
**hereinafter** 30:24
**hereto** 55:20
**hey** 24:3
**hi** 36:13 46:12,13
**home** 17:25
**Honda** 10:15,16
**Honolulu** 1:13 2:5
  2:11 7:9 55:1
**Hortizuela** 1:11 4:1
  4:7 54:1,10 55:5
**HRCP** 55:17

**I**

**Ian** 11:4,5
**idea** 50:17
**identification** 3:9
  18:5 25:11 43:21

45:1
**identified** 33:24
  39:20 40:10 41:2
**include** 35:8 40:22
  46:1
**included** 37:4
  44:19 45:14,21,22
  45:23 46:3 49:1
  51:18,19 52:10,11
**including** 34:1
**inclusive** 54:3
**INCORPORAT...**
  1:4
**independent** 31:19
  32:6,13 41:6 47:9
  51:25
**independently**
  27:16
**INDEX** 3:1
**indicate** 19:19
**indicated** 27:11
**indicating** 21:18
  32:5 45:18
**information** 44:16
**instance** 39:20
**insurance** 1:7 2:8
  12:23 13:2,21,25
  14:1,6,21 15:2,14
  16:3,19,22 17:16
  31:20 32:6,12
  44:17 45:10 47:5
  47:13,15,25 48:13
  49:25 50:4 51:24
**interested** 55:20
**interrogatories**
  3:13 25:14 26:6
**introduced** 29:23
**involvement** 17:3
  24:8
**issued** 26:10
**issues** 49:19

**J**

**Janis** 10:7,12,12,14

10:16
**January** 1:14 31:24
  32:8,15 41:14
  45:19 51:14 52:2
  52:6 55:4
**job** 11:8 20:6,7
  30:15 37:19 42:11
  42:15,19 43:13,14
**JOHN** 1:7
**Joint** 7:5 14:17
  22:21 23:21 25:15
**July** 14:16
**jumping** 33:11

**K**

**Kahaialii** 9:24,25
  10:1,2 11:17
  19:22
**keep** 13:16 28:25
  29:2 46:17
**Kelly** 9:20 11:17
  12:1,3 14:1 15:10
  16:15 17:1,2,16
  19:20 20:15 22:14
  29:7 35:13,17
  37:17 38:3,17
  39:9 40:5,15,17
  40:18 42:17 49:1
**Kent** 8:24 9:9
**kept** 12:15 13:14
  13:22 14:2,7,9,25
  15:3 30:24 46:18
  47:1
**Kim** 10:23
**kind** 12:19
**knew** 43:11
**know** 9:5 13:16,17
  13:19,21 14:6,8
  14:24 15:8,8,10
  15:13 17:14,18,24
  17:25 19:3 24:20
  38:22,25 39:1,2,4
  39:5 40:4,8,9
  41:19,25 42:5

43:15,17 44:11,15
  44:19 45:8,14,23
  45:25 46:23 47:4
  47:7,22 48:22
  49:1,16,21,23,25
  50:3,22,23
**K-a-h-a-i-a-l-i-i**
  10:2
**K-e-l-l-y** 9:22

**L**

**labeled** 39:5,24
  40:3 45:12
**Lau** 3:11 8:19,20
  9:16 11:19,21
  12:7,15 13:8,24
  15:14 16:6,19
  17:15,19,21 18:12
  19:19 20:1 22:18
  34:23 37:3,9,20
  38:5,22 39:6,18
  42:4 43:10,24
  44:13,17 45:19
**Lau's** 9:19 11:18
  11:21,25 12:1
  17:10 19:25 26:12
  36:25 37:22 38:18
  42:12 44:7 45:4,7
  50:18 51:2
**law** 1:12
**learned** 30:5
**leave** 20:20 21:12
  23:6,22
**Lee** 34:21
**left** 29:11
**legal** 4:12
**legible** 33:14
**length** 47:1
**letter** 3:14,16 16:7
  34:20 44:17 45:10
**letterhead** 43:23,24
  45:3,4
**letters** 31:18
**let's** 7:4 8:15 12:17

12:19 17:14 18:2
25:8 30:12 31:9
43:3 45:2
**Liberty** 1:7 2:7
6:15 31:20 32:5
32:12 34:21 44:17
45:10,12,18 51:13
51:16,24
**limit** 51:21
**limited** 52:3,4
**Linda** 10:9,11,17
10:18
**line** 27:11
**list** 7:17
**listed** 34:8 37:5
**listening** 5:6
**listing** 49:12
**little** 31:8
**live** 27:2
**LLP** 2:9
**located** 7:6
**logs** 30:23 32:23
**long** 4:10 7:10
46:18 47:21
**look** 5:15 13:10
21:20,20 23:9
44:1,6,7
**looking** 22:24 34:6
41:12
**looks** 48:19
**Lorraine** 26:9
36:12,13
**loud** 28:24
**Lovewell** 10:18,19
**low** 29:2
**Lusitana** 7:7

**M**

**M** 2:4
**machine** 28:10,11
**MacKinnon** 2:9
**mail** 55:13
**maintain** 15:20,25
37:19 38:5

**maintained** 14:21
15:16 42:4
**mark** 18:3,16 25:9
43:19
**marked** 3:9 18:4,7
25:10,12 43:20
44:22,23,25
**married** 4:8,12
**matter** 6:20 25:19
36:12 55:11
**matters** 11:25 12:7
**McCorriston** 2:9
**mean** 12:16 24:19
24:24 30:12
**meaning** 4:19 5:6
**medical** 31:19 32:7
32:13 47:9 51:25
**meeting** 25:17
27:18
**mentioned** 8:6 16:3
**messages** 11:11
**met** 26:12
**mid** 14:15
**Miller** 2:9
**Mitsunaga** 8:22
9:12
**Mitsunaga's** 12:5
**Moana** 2:10
**monitor** 23:25
**Morris** 8:22 9:12
**Mukai** 2:9
**Mutual** 1:7 2:8
6:15 31:20 32:5
32:12 34:21 44:17
45:10,12,18 51:14
51:16,24
**M.D** 3:11 18:13

**N**

**name** 4:6,12 6:12
9:21,23 10:14,23
26:21,21 36:19
48:19,20 50:3,4
**named** 55:21

**names** 8:15 10:6
31:20
**name's** 6:13 46:14
**necessary** 5:19 27:4
52:16
**need** 4:21 5:6 16:14
21:13 23:16
**never** 6:21
**ninth** 40:1
**Nodding** 5:9
**normally** 49:4
**Notary** 1:18 25:18
26:9 27:6,18 28:7
28:19 31:3,16
33:13 34:1,25
35:8,12 36:1,5,6
36:11 38:9 39:13
41:1 42:22 55:2
55:24
**noted** 34:11,16
54:3,5
**Notice** 1:14
**noticing** 55:18
**notified** 55:12
**November** 34:21

**O**

**oath** 4:20 42:4
**observe** 30:6
**obtains** 40:5
**occasion** 18:22
**occupied** 30:8
**October** 3:11,16
18:18 20:11 25:15
27:5,16 31:14,25
32:8,15 41:2,15
44:20 45:12,15,19
51:15,16 52:2,6
**office** 12:20 13:17
15:4 17:10,23
18:22 23:21 25:2
26:13 28:3 29:16
36:13 38:15 44:13
46:17,24 47:12

50:18 51:3
**offices** 1:12
**Oh** 44:3
**Okamura** 8:24,25
9:6 12:12,13
**okay** 4:8,14,16,22
4:23 5:3,8,10,18
6:2,3,7,9,10,14,16
6:22,24 7:2,3,4,8
7:21,25 8:2,16,18
8:23 9:2,4,11
10:12,19 11:7,10
11:12 12:2,19,25
13:6 14:4 15:11
16:8,16 17:9 18:8
19:5,13 20:8,9,14
20:22 21:9,14
22:16 23:10,11,15
24:13,22 25:21,22
25:24 26:11,14,23
28:7,12 29:14
30:2,4,21 31:7,9
31:11 32:3 34:10
34:18,22 35:3
36:4,23 39:16
40:2,12,16 41:9
41:18,25 42:10
43:3,4,5,8 44:16
44:24 45:9,23
46:7,9,16,23 47:3
47:10 48:2,14,17
48:18 49:11 50:8
50:9,14 51:7,23
52:5,14,18,19,20
53:5
**old** 46:21
**Onaga** 11:4,6,7
**once** 23:20
**ones** 48:10
**orally** 5:5
**order** 36:25 37:4
38:23
**organize** 15:18,22
**organized** 15:16

17:18
**original** 55:16,17
**originals** 33:13
**ORTHOPEDIC**
1:3
**outcome** 55:20
**o's** 11:1

**P**

**page** 3:3 18:15
21:17 25:14,25
26:21 27:11 30:13
30:21 31:9 32:19
33:11,21 34:6,14
34:17 39:20,24
40:1,3 41:12
43:23 44:1,5,6
45:3,6 52:7
**pages** 3:15,16
34:12,20 35:4,11
37:7 54:3
**paid** 32:5
**paper** 36:17
**part** 20:6,7 37:19
38:22 40:6 42:19
43:13,14
**particular** 17:18,19
18:25 27:16 39:20
**parties** 55:15,20
**party** 43:11
**pass** 16:25 23:20
42:17
**patient** 13:15,18
14:2,7,21,25 15:7
22:1 49:12 50:3
51:20,21 52:3
**patients** 11:13,15
11:19,22 12:18,21
13:8 27:24 28:24
**patient's** 21:6,21
22:3 23:9 36:18
48:19
**Peacock** 18:16
20:13 21:11,12

04-00256

people 13:7 28:20
  29:4
performed 31:19
period 41:12,12
  52:4
person 33:15,25
  37:13 38:15 39:8
  45:25 48:19
personal 27:2
persons 31:20
person's 23:4,7
pertaining 22:7
  33:15,24 36:21
pharmacy 8:3,4
  10:20
phone 11:9
phonetic 26:1,2
physician's 23:21
  23:22 24:2
pick 24:5,12,18,20
  42:7 48:1
pick-up 36:18
piece 36:16
place 13:19,20 15:3
  15:7 20:20 48:5
Plaintiffs 1:5,12
  2:3 4:2 26:4
Plaza 2:10
please 4:6 6:6,8
  33:12,22,22 53:4
Plus 9:7,8
point 31:4
policy 46:23
portion 33:6
PORTNER 1:3
position 7:12 27:12
  30:8,15,22
practice 22:13
  27:18
previous 30:1
previously 30:8
print 40:13,18,19
  55:9
printed 32:4

prior 31:22 33:7
  55:6
privacy 49:19
problem 41:18
proceedings 55:7
  55:11
produce 35:11
  36:25 45:17
produced 35:1,5,8
  39:3,21 40:24
  42:13 44:20 45:15
  46:5
production 31:22
  46:1 51:19
provide 5:10 27:19
  43:9 49:14,17
provided 34:11
provides 26:6
providing 24:8
  25:19
proximity 29:7
Public 1:18 25:18
  26:10 27:6,18
  28:8,20 31:3,16
  33:13 34:1,25
  35:8,12 36:1,6,11
  38:9 39:13 41:1
  42:22 55:2,24
purpose 4:19
purposes 27:4
  31:16
pursuant 1:14
  25:16 33:16 55:17
put 15:8,10 24:4
  28:10
p.m 1:14 43:6,6
  50:10,10 53:6
  55:4

---

### Q

Queen 1:13 2:5
question 6:3 27:14
  30:12,13,15,21
  31:2,9,13,14 32:3

32:11,18,22 33:2
  33:6,12,21 41:2,3
  41:7,13 51:12
questions 4:21,25
  5:2 6:8 25:4,6,19
  25:23 26:7,15
  27:2,5,19 29:25
  30:10 31:16 34:7
  41:24 42:20 46:8
  46:15 50:13
quick 50:6
quickly 27:15
quote 30:15

---

### R

read 21:1,2,3,5
  25:23 31:3,13
  41:1 52:22 54:2
readily 33:23
reading 55:14
ready 23:16 24:4
  24:17,21,25 35:15
  35:19 37:12,14
  39:15 40:17 42:7
  43:7
real 43:3
really 27:4
reason 26:18 35:3,7
  41:18 45:9
recall 18:25 19:9
  19:12 21:7 25:17
  27:15 41:4,7
receive 23:20 42:15
received 22:6
receiving 17:10
  18:25
receptionist 7:13
  27:12 30:16 42:15
  51:1
receptionists 30:1,8
Recess 43:6 50:10
recognize 43:23
  45:3,6
recollection 41:6

record 12:16 22:1,7
  39:25 40:9 47:21
  49:9,10,23 50:17
  51:25 52:6
records 3:11 12:15
  12:19,20,22,23
  13:1,2,7,10,11,12
  13:14,16,19,20,22
  13:25 14:6,6,20
  14:21 15:2,2,9,10
  15:13,14,18,20,23
  16:1,3,6,10,13,19
  16:21,22 17:4,4
  17:11,11,15,15,21
  18:12 19:19 20:2
  21:25 22:1,7,17
  24:3,8,15 27:20
  30:23,24 31:18,21
  32:4,6,8,13,23
  33:2,6,14,24 34:1
  34:2 35:16,19
  36:14,20,25 37:3
  37:8,20,22 38:4,5
  38:10,11,18,18,23
  39:6,9,11,14,16
  40:4,17 42:1,12
  42:24 43:10,15
  45:19 46:17,18,20
  47:1,2,4,6,8,14,17
  48:1,10 49:13,14
  51:2,10,14
redacted 31:22
reduced 55:9
referred 30:24
reflecting 31:18
  32:5
regard 46:17
regarding 14:21
  45:18
regards 47:1
Register 11:15
regular 9:1,13
REHABILITAT...
  1:3

related 30:24 32:13
  48:22,25
relating 13:7 21:25
  22:7 31:18 51:14
  51:24
remember 18:17,20
  18:20,21 19:7
  41:5,7,9,10
reminding 51:12
removed 33:7
removing 46:20
reopen 52:16
report 3:14,16
reporter 5:5,10
  6:19 25:1 27:19
  31:3 36:1,6,11
  39:14 41:1 42:22
  52:25
reporters 25:18
reports 30:24,25
  31:17 49:23
representing 38:9
represents 55:10
request 16:6 31:19
requirements
  33:16
requiring 31:15,17
reserve 52:16
response 23:18
  24:9 32:24 33:8
  34:10 49:2
responsibility
  15:18,20,22,25
responsive 31:23
  32:7,14 41:14
  42:5 52:1
retention 55:18
retired 7:24
return 21:17
review 5:17 13:1,11
  14:7 16:6,19,21
  17:4,11,11,15,21
  37:3 47:21 50:17
  51:2

ENGLE v. LIBERTY MUTUAL FIRE INSURANCE COMPANY

reviewed 31:21
reviews 13:12 15:2
  15:14 22:1,7
  31:18 32:6,13
  39:2 45:19 47:4,8
  49:9,10,11,23
  51:14,25 52:6
Rhonalyn 1:11
  3:13 4:1,7,13
  25:13 26:3,21
  46:12 54:1,10
  55:5
right 4:18 5:1,11,14
  5:21 6:5,11 7:1,6
  7:12 8:15 9:18
  10:4,4,8,16 11:14
  11:17 12:4,15
  13:9 15:13 16:5
  16:14,23 17:3,13
  17:14 18:11,24
  20:12 21:14,25
  22:1,4,5,5,13 23:1
  23:6,12 25:8 26:1
  26:8 27:3,8,9 28:5
  28:14 29:4,23
  30:12 32:18,22
  33:2,20 34:18,23
  35:3,14,18 36:6
  36:20 37:13,19
  38:15 39:7,18
  41:5 42:2,25 43:1
  43:2,9,11,12,16
  44:2,22 45:11
  48:21 49:18 50:24
  50:25 51:10,11,17
  51:19 52:12,22
right-hand 34:17
Robinson 2:9 3:5
  6:13,13,15 46:11
  46:14 50:6,9,11
  52:15,18
Rone-a-lynn 25:25
Ron-a-lynn 26:2
room 28:8

**S**

saying 26:1 28:21
says 30:21
schedule 9:5
scheduled 16:12
schedules 11:18
sealed 55:16
search 36:25
seated 28:14,18
second 20:8 45:6
see 7:4 12:20,22
  15:8 17:14 21:15
  22:3,21 23:11
  26:24 29:19 30:12
  30:17 31:12 32:1
  32:9,16,20,25
  33:4,9,18 34:8,16
  39:23 41:16 50:7
seen 13:8 17:21
semi 7:23
semi-retired 7:22
  8:13
send 47:17
sends 47:23
sense 6:1
sent 12:23 13:2
  15:13 17:10,15
  47:14,23
separate 13:20
  14:10 15:3
separately 14:9
serve 18:23
served 18:16 19:18
  20:10,11 22:14
  31:15 33:17 34:7
service 21:17
set 27:22 50:1,3
shaking 5:9
share 11:23
sheriff 18:16 20:13
  21:10 22:20
She'll 36:16
Shim 1:12 2:4
short 43:4

shorthand 55:8
show 18:6 36:10,16
  36:16 43:18 44:22
showing 25:12
shown 34:12 35:4
  36:12 52:7
shred 47:19 48:7
shredded 47:6 48:2
  48:10
Shred-It 48:3
side 27:24 28:1,8
  29:4,4
sign 16:14 19:16
  21:7,13,19 52:24
  55:13
signature 44:7,11
  45:6,7
signed 54:13 55:14
signing 21:8 55:15
simply 27:6 28:16
single 34:20
sit 29:7,9
sitting 28:20 29:6
situation 19:18
  22:3 28:18
six 34:11 35:4,11
  37:7
six-month 41:11
six-year 41:12
somebody 25:1
  47:25
someone's 29:6
Somewhat 36:2
SOM/BK 1:3
sorry 6:12 33:22
  41:12 44:3
special 20:20
specific 12:18
specifically 19:8,9
  31:2
spell 9:21
stamp 44:13
stand 28:8
start 8:15 12:17,19

18:2 30:13 45:2
started 14:15
state 1:18 4:6 26:20
  55:1,3,24
stated 26:21 31:14
statement 34:14
  39:21 40:5,20
states 1:1 25:25
  26:9,12 27:14
  41:13 52:1
stored 32:4
Street 1:13 2:5 7:7
Strictly 12:3
subject 37:9 48:19
subpoena 3:11 18:9
  18:9,25 19:6,8,12
  19:16,18,20 20:10
  20:24,25 21:1,8
  21:20,25 22:13,20
  22:25 23:7,20
  24:9 25:16 31:4
  31:15,23 33:17
  34:6,10 35:12,16
  36:21 37:1,5,9,15
  37:16 39:3,5 40:5
  42:5,12,15 46:4
  49:2 51:21,22
  52:9
subpoenaed 31:4
subpoenas 18:23
  19:10 20:2 22:7
  22:17 38:18,23
Suite 1:13 2:5 7:9
supervision 55:9
supposed 45:17
  49:17
sure 5:17 21:6 23:8
  49:24
surgeries 8:14
swear 24:18,19
swearing 29:24
switch 48:17
swore 26:15
sworn 4:3,17 26:4

38:13 55:7
system 40:11

**T**

take 5:10 11:11
  15:9 22:13,14
  27:6 42:3 43:3
  44:4 50:6
taken 1:12 25:15
  43:6 50:10 55:8
takes 38:22
talk 28:16 41:19
talking 28:19 36:23
tapes 30:23,23
  33:15
taught 29:25
tech 8:3,4,4 10:20
  11:3
technician 8:3
tecum 3:11 18:10
telephone 55:13
tell 4:21 6:6 19:4,7
  19:8 20:24 26:4
  38:13 39:14 46:3
  47:15 48:20 51:1
  51:6
testified 4:3 26:5
  41:19
testify 41:24
testifying 4:19
testimony 4:17 6:1
  43:10 54:5 55:5
things 27:2
think 14:13 50:11
three 34:7,10 41:13
Thursday 1:14
  55:4
TIARA 1:3
time 6:23 14:11,17
  14:24 27:5,11
  33:8,13 52:4
times 31:5
today 4:19,24 27:1
  36:24 41:19

**told** 29:23 35:25
  36:13 38:3 42:19
  43:13
**top** 43:23 45:3
**total** 7:20 34:12
**transcript** 26:12,20
  34:12,19 36:23
  37:16 54:4 55:10
**transcription** 55:14
**true** 54:4
**truth** 4:21 26:4,4,5
  38:13
**truthful** 4:17
**try** 6:10 31:5,8
**turn** 23:13 33:12
  35:16
**turned** 33:25 37:14
**two** 4:11 7:11 8:1
  8:11,11,12,25 9:1
  9:13,14,15 10:4
  14:13 19:4 24:3
  50:12
**type** 5:12 12:20,22
**typed** 32:4
**typewritten** 54:2
**typing** 5:6

___
U
___
**Uh-huh** 7:15 10:3
  13:4 14:12,19
  15:15 18:14 24:16
  26:17
**uncomfortable**
  38:3,7
**understand** 6:4
  38:13
**understood** 6:9
**UNITED** 1:1
**unsigned** 55:17
**use** 44:13
**usually** 16:7 19:14

___
V
___
**various** 41:11

**verbal** 5:7
**verify** 37:7
**versus** 14:21
**video** 30:23 33:14
**volume** 29:2
**vs** 1:6

___
W
___
**waiting** 27:24 28:8
  28:20
**waived** 55:15
**walk** 20:17,21
**wall** 29:13,18
**want** 5:15 7:16,17
  19:6 42:9 47:6,6
  52:24,25
**wanted** 41:20
**wants** 24:14
**Waterfront** 2:10
**way** 7:17 17:18,19
  19:11 35:25 37:7
  38:4,7 40:9 42:9
  50:1 55:20
**ways** 19:4
**weeks** 4:11 24:3
**went** 41:3
**we'll** 7:1 18:2 25:9
  25:21,21 43:19
**we're** 5:12 7:9
  36:23 43:4
**witness** 4:2 6:12,14
  6:16 26:3 43:5
  46:9 50:14 52:14
  52:20,23 53:2,4
  55:5,6,12,15,16
**words** 20:4
**work** 7:4,5
**worked** 7:10 14:11
  14:17
**working** 22:22
**works** 7:16
**wouldn't** 28:24
  29:19 49:12
**write** 28:11,12

**written** 3:13 25:14
  26:6
**wrong** 51:9

___
X
___
**X-ray** 8:3,4 11:3

___
Y
___
**yeah** 6:25 9:5,8
  11:2,21,22 12:3
  14:5,10,16 15:12
  16:17,24 18:23
  20:23 21:19,19
  22:12 24:23 26:2
  29:15 36:5 43:14
  44:6 48:7 51:20
**years** 7:11 14:13

___
0
___
**00256** 1:3
**04** 1:3

___
1
___
**1** 31:17,24 32:8,15
  34:16 39:24 40:3
  41:14 45:3,19
  51:14 52:2,6 54:3
**1-10** 1:7
**10** 29:8,8 31:25
  32:8,15,22 41:15
  45:20 51:15 52:2
  52:7
**11** 1:14 33:2 55:4
**12** 33:6
**1329** 7:7
**14** 3:14 44:18
**15** 29:8
**16** 3:16 45:12
**17** 33:11
**18** 3:11 34:21
**19** 27:11 33:21
**19th** 18:18 20:11

___
2
___
**2** 3:16 25:25 27:11

30:13,21 32:3
  34:20
**2/line** 26:21
**2:35** 1:14 55:4
**2000** 31:24 32:8,15
  41:14 45:19 51:14
  52:2,6
**2003** 3:14,16 34:21
  44:18 45:13 51:16
**2004** 14:15,16
**2006** 3:12 18:18
  25:15 31:14,25
  32:8,15 41:2,15
  44:20 45:15,20
  51:15 52:2,7
**2007** 1:14 54:14
  55:4
**25** 3:13
**251** 1:18 55:24
**27** 3:12 45:15
**27th** 25:15 27:6,16
  31:14 41:2 44:20

___
3
___
**3** 32:11 34:20
**3:18** 43:6
**3:20** 43:6
**3:34** 50:10
**3:35** 50:10
**3:38** 53:6
**30(f)(1)** 55:17
**333** 1:13 2:5

___
4
___
**4** 3:4,15 21:17 31:9
  34:6,20 41:13
  52:7
**4th** 2:10
**43** 3:14
**44** 3:16
**46** 3:5

___
5
___
**5** 32:19 33:11 34:20

52:7
**50** 3:6
**500** 2:10
**501** 7:9
**53** 54:3

___
6
___
**6** 30:13,15 33:21
  34:20
**6/20/09** 55:25

___
7
___
**7** 27:14 30:12,21

___
8
___
**8** 26:21 31:2

___
9
___
**9** 31:9,13 32:18
  41:3,7,13 51:12
**9:00** 3:12
**900** 1:13 2:5
**96813** 2:5,11 7:9